Carlos EADY, Appellant,

v.

UNITED STATES, Appellee.

No. 07–CF–1235.

District of Columbia Court of Appeals.

Argued March 4, 2010.
Decided May 24, 2012.

Marie L. Park, for appellant.

Sarah T. Chasson, Assistant United States Attorney, with whom Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III and Chrisellen Kolb, Assistant United States Attorneys, were on the brief, for appellee.

Before OBERLY, Associate Judge, RUIZ, Associate Judge, Retired,* and KING, Senior Judge.

RUIZ, Associate Judge, Retired:

Carlos Eady appeals his convictions for carrying a pistol without a license ("CPWL"),[1] possession of an unregistered firearm ("UF"),[2] and possession of ammunition ("UA").[3] Appellant's convictions were subject to sentence enhancement because appellant had a prior felony conviction,[4] and because he had committed an offense while on release.[5] Appellant argues that the trial judge committed reversible error by (1) reading the unredacted indictment to the jury, which stated that appellant had a prior felony conviction and had committed the charged offenses while on release, (2) instructing the jury and permitting the prosecutor to argue that appellant had been on release and had committed a prior felony, and (3) providing to the jury written copies of appellant's stipulations regarding his other crimes. We agree with appellant that the jury was unnecessarily and prejudicially informed about appellant's prior felony conviction and other criminal prosecution. We, therefore, reverse and remand for a new trial.[6]

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

1. D.C.Code § 22–4504(a) (2001).

2. D.C.Code § 7–2502.01 (2001).

3. D.C.Code § 7–2506.01(3) (2001).

4. D.C.Code § 22–4504(a)(2) (2001).

5. D.C.Code § 23–1328(a)(1) (2001).

6. Appellant also challenges his convictions on the grounds that: (1) admission of out-of-court statements made by appellant's mother to the investigating officers violated the Confrontation Clause and did not qualify for any exception under the hearsay rule; (2) admission of the investigating officer's testimony regarding appellant's pre-arrest demeanor and appellant's silence and lack of responsiveness when the arresting officer asked him questions violated appellant's Fifth Amendment right against self-incrimination; and (3) admission of two Certificates of No Record without the testimony of the individual who created the records violated appellant's rights under the Confrontation Clause. Because we dispose of appellant's case on grounds that the trial judge plainly erred in admitting other

## I. Facts

Appellant's trial was brief, with the presentation of the government's evidence taking only four hours. The government presented evidence that, at approximately 7:30 p.m. on February 24, 2006, at least four police officers, including Detective Angelo Battle and Officer Ivan Jordan, arrived at a house in Northeast Washington, D.C. in response to a 911 call from that location. They knew only that the caller had reported that someone was acting erratically and destroying property at the house. When they entered the house, they found that it was in "disarray" and clothes and furniture were strewn "all over the place." As described by Detective Battle, the house looked like "someone had either dumped some clothes or turned the house upside down." Appellant's mother, Charlene Harris, was inside the house and she spoke to the officers. Harris was "upset" and "agitated" and "was moving around erratically" when the officers arrived. The house was in disarray, she said, because appellant had been extremely upset and angry and had "torn the house upside down looking for his handgun." Harris told Detective Battle that appellant had "flipped the couch over that his younger sibling was on and ... found a handgun under the couch." Appellant then pointed the gun at Harris, "made some statements," and left the house with the handgun. Harris gave the officer a physical description of her son and asked the officers to find him and "bring him home or make him safe."[7]

After studying a photo of appellant that was hanging on the wall, the officers left to search for appellant outside. A short time later, Detective Battle saw appellant standing across the street. Detective Battle yelled, "Hey, Carlos," and the group of officers approached appellant. Detective Battle testified that he "[k]ept a neutral conversation with [appellant]" and told him that his mother was "upset" and was waiting for him back at the house. Appellant appeared to be "real agitated" and was surprised that Detective Battle knew his name. Detective Battle testified that, throughout his "small conversation" with appellant, he was "pretty much doing all the talking and [appellant] was just looking at [him], heart beating real fast ... like excited. Eyes [were] like wide open." In response to appellant's apparent physical distress, Detective Battle put his hand on appellant's chest and asked if he needed any medical attention.

Detective Battle testified that he did not pat appellant down and allowed appellant to walk away. He explained that he "felt pretty secure with the four [other officers]" and did not search appellant because he did not want to "spook" him. Officer Jordan, however, recalled things differently; he testified that the officers did a "protective search" when they encountered appellant on the street and did not find a gun on him.

Detective Battle then hid in a nearby alley and waited to see if appellant would return to look for a gun. Detective Battle was lying on the ground in the alley when appellant came within 20 to 30 feet of him and walked up "real casual" and looked all around him. Appellant then picked up a gun from the ground with his right hand, put the gun in his right pocket, and took a few steps away from Detective Battle.

---

crimes evidence, we do not address these additional objections.

**7.** Harris did not testify at trial and her out-of-court statements to the officers were admitted, over defense counsel's objection, under the excited utterance exception to the hearsay rule.

Detective Battle sent out a radio call for the other officers because "[appellant] just picked [the gun] up and I thought it was about to get ugly for both of us." According to Detective Battle, "[t]he neighborhood was completely quiet and you can hear the engines, the police cars revved up and the tires screech.... So [appellant], of course he heard the same thing that I heard. He just took the gun back, threw it back on the ground and walked right back out to the same spot where we just stopped him minutes, minutes prior...." Detective Battle estimated that the time that elapsed between when he first saw appellant in the alley and when appellant threw the gun down was "20 to 30 seconds at the max," but that "it sure felt a little quicker than that." When the other officers arrived, Detective Battle told them to secure appellant. He then returned to the area where he had seen appellant toss the gun down and found a Glock lying on the ground.

The gun that Detective Battle found was operable and appellant did not have a license to carry a pistol in the District of Columbia. Officer Ronald Royster testified that he later tested the gun for fingerprints, but no fingerprints were found on either the handle of the gun or on the bullets inside.

Appellant did not testify. His defense was that he did not "carry" or "possess" the gun that Detective Battle saw and that, even assuming that he had picked up the gun, any possession was "innocent" and devoid of criminal purpose. In support of this assertion, defense counsel emphasized Officer Jordan's testimony that the officers had conducted a "pat down" when they first encountered appellant on the street and did not find a gun on him. Counsel also argued that the absence of appellant's fingerprints on the gun Detective Battle found or on the bullets in it indicated that appellant never touched the gun.

After a full afternoon and a morning of deliberation, the jury convicted appellant on all counts: CPWL, UF and UA.

## II. Evidence of Other Crimes

The indictment charged appellant with committing four offenses, including one count of CPWL (with a sentencing enhancement due to a prior felony conviction), and one count of committing a crime while on release for another pending criminal case. The trial court, the prosecutor, and defense counsel discussed the charges against appellant and defense counsel stated his understanding that the crime of committing an offense while on release is an "enhancement," not a separate offense. However, believing that "anything that's a factual matter that has an impact on sentencing has to be decided by the jury," the trial court admitted evidence, permitted argument, and instructed the jury concerning appellant's prior felony conviction and that he had been on release in another criminal case when he committed the CPWL offense charged in this case. The government concedes, and we agree, that evidence and argument that related to these two points—appellant's prior conviction and release status when he committed the charged CPWL offense—served no legitimate purpose in the jury's consideration of appellant's guilt of the charged offenses.

The trial court's reasoning was based on the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), where the Court considered another type of sentencing enhancement, for a hate crime (purpose to intimidate victim because of race). *Apprendi*'s rule protects the defendant's rights under the Fifth and Sixth Amendments by requiring that any fact

that "increases the maximum penalty for a crime" be disclosed by indictment, submitted to trial by jury, and proven beyond a reasonable doubt. *Id.* at 476, 120 S.Ct. 2348.

One of the offenses with which appellant was charged, CPWL, is punishable at three different levels of severity. *See* D.C.Code § 22–4504(a).[8] The lowest penalty is imprisonment of up to one year and a fine of up to $1000. D.C.Code §§ 22–4504(a) & 22–4515, however, under § 22–4504(a)(2), the penalty for CPWL is enhanced to imprisonment of up to ten years and a fine of up to $10,000 if the defendant has previously been convicted of the same offense in the District of Columbia, or of a felony in the District or in any other jurisdiction. The Supreme Court established in *Apprendi* that the fact of a prior conviction does not have to be submitted to the jury's consideration before the judge may enhance the sentence. *See id.* at 490, 120 S.Ct. 2348. (*"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the pre-

scribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added.)); Criminal Jury Instructions for the District of Columbia, No. 8.100, cmt. (5th ed. 2011) (noting that, under *Apprendi,* the "government must prove to the jury beyond a reasonable doubt the aggravating circumstances … except for those circumstances that involve prior convictions"); *see generally Sanders v. United States,* 809 A.2d 584, 599–602 (D.C.2002) (explaining procedures required for enhancement of sentence). Thus, the trial court's premise that the jury had to find that appellant had a prior conviction was clearly erroneous.

Similarly, D.C.Code § 23–1328[9] does not create a separate offense, but is a sentencing enhancement provision that adds a consecutive term of imprisonment of one to five years for felony offenses (ninety to one hundred eighty days for misdemeanors) committed while on release for another offense, pursuant to D.C.Code § 23–1321. *See Tansimore v. United States,* 355 A.2d 799, 803 (D.C.1976) ("By

---

**8.** Section 22–4504, which establishes the offense of CPWL, states in relevant part,

> (a) No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in § 22–4515, except that:
>
> (1) A person who violates this section by carrying a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon, in a place other than the person's dwelling place, place of business, or on other land possessed by the person, shall be fined not more than $5,000 or imprisoned for not more than 5 years, or both; or
>
> (2) If the violation of this section occurs after a person has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District

of Columbia or another jurisdiction, the person shall be fined not more than $10,000 or imprisoned for not more than ten years, or both.

D.C.Code § 22–4504(a).

**9.** Section 23–1328 provides in relevant part,

> (a) Any person convicted of an offense committed while released pursuant to section 23–1321 shall be subject to the following penalties in addition to any other applicable penalties:
>
> (1) A term of imprisonment of not less than one year and not more than five years if convicted of committing a felony while so released; and
>
> (2) A term of imprisonment of not less than ninety days and not more than 180 days if convicted of committing a misdemeanor while so released.

D.C.Code § 23–1328(a).

The additional term of imprisonment is to be consecutive to any other term of imprisonment. *Id.* at (c).

its very terms, the provisions of [D.C.Code § ] 23–1328 [committing an offense while on release] become operational only after a trial and after the accused has been found guilty."). Although we have said that the government must prove—and the defendant must be allowed to counter—the defendant's release status before the judge may enhance the sentence, see id. at 803–04, we have also commented that "[t]he fact that one was on release during the commission of a crime for which he is convicted merely serves to enlarge the penalty and is, therefore, a sentencing matter within the exclusive jurisdiction of the trial judge." Id. at 803. We have not had occasion to revisit the views expressed in Tansimore to decide whether, post-Apprendi, in a case where the defendant disputes that he was on release status, the question must be submitted to the jury.

We need not decide that question here because in this case defense counsel informed the court that appellant agreed to stipulate that he was on release for another criminal case at the time of the charged CPWL offense.[10] See Apprendi, 530 U.S. at 488, 120 S.Ct. 2348 (explaining that in Almendarez–Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), defendant had admitted he had three prior convictions that, under 8 U.S.C. § 1326(b)(2), authorized the judge to increase sentence based on "recidivism"). Thus, in light of appellant's stipulation, the Constitutional bases for Apprendi—the defendant's rights under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth—were not implicated in appellant's trial.[11] That stipulation, more-

10. Appellant also stipulated to the fact that he had a prior felony conviction. The court had given defense counsel a choice between entering a stipulation with the government as to the fact of appellant's prior felony conviction or allowing the government to "proceed with a certified copy of the actual felony."

11. In Harris v. United States, 536 U.S. 545, 568, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Court reaffirmed its (pre-Apprendi ) decision in McMillan v. Pennsylvania, 477 U.S. 79, 89–90, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), holding constitutional a statute imposing a mandatory minimum sentence upon the judge's finding of a fact set out in the statute as a sentencing enhancement.

The Court has not expressly decided whether Apprendi applies to every fact (other than a prior conviction) that increases the sentence beyond the maximum allowed for the underlying offense. Several federal courts have addressed, mostly in dicta, whether Apprendi applies to the enhancement of a sentence pursuant to 18 U.S.C. § 3147 for committing the charged offense while on release for another offense—the federal analog to D.C.Code § 23–1328—the terms of which have been incorporated as an "offense characteristic" that leads to enhancement of sentence for the offense of conviction under the federal Sentencing Guidelines. See, e.g., United States v.

Lewis, 660 F.3d 189, 195 & n. 4 (3d Cir.2011) (reversing conviction under 18 U.S.C. § 3147 because it is not a separate offense, but noting that trial court did not err in submitting to jury whether defendant had been on release and that "jury interrogatories" or "bifurcated trial" may be used to satisfy Apprendi 's requirements); United States v. Confredo, 528 F.3d 143, 155–156 (2d Cir.2008) (applying Apprendi because defendant was exposed by § 3147 to a higher maximum sentence than allowed for underlying offense, but finding no Apprendi violation because even though sentencing enhancement was not included in indictment or presented to jury, defendant "sufficiently admitted" fact on which enhancement rested); United States v. Samuel, 296 F.3d 1169, 1172–1175 (D.C.Cir. 2002) (noting that defendant's enhanced sentence under § 3147 could not have exceeded life imprisonment allowed as maximum for underlying offense of conviction); United States v. Randall, 287 F.3d 27, 32 (1st Cir. 2002) (noting that even after enhancement, sentence actually imposed did not exceed applicable statutory maximums for underlying offenses of conviction). Some courts have commented that the dispositive factor is whether the sentencing enhancement "exposes" the defendant to a sentence that exceeds the maximum allowed by the underly-

over, also made it unnecessary to advise the jury of a prejudicial fact that played no part in the jury's consideration of the charged crimes, and was relevant only to sentencing. *See Old Chief v. United States,* 519 U.S. 172, 191–92, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (where defendant was willing to stipulate to felon status at time of charged offense—an element of the crime—"only reasonable conclusion" where admission of evidence of type of felony was "likely to support conviction on some improper ground" was that "risk of unfair prejudice did substantially outweigh the discounted probative value" of the evidence). Thus, it was clear error to admit it as evidence in the trial.

### A. What the Jury Heard

During *voir dire* of the jury pool, the trial court informed the prospective jurors that appellant had been charged with "carrying a pistol without a license with an alleged prior felony" and "an offense committed during release allegedly on another case." The trial judge also read the indictment to the jury, which states, in relevant part:

FIRST COUNT:

On or about February 24, 2006, within the District of Columbia, Carlos M. Eady, *previously having been convicted of a felony or a violation of 22 D.C.Code, Section 4504(a) (2001 ed.) [CPWL],* did carry, openly or concealed on or about his person, a pistol, without a license issued pursuant to law. (Carrying a Pistol Without a License, in violation of 22 D.C.Code, section 4504(a) (2001 ed.))

. . .

FOURTH COUNT:

On or about February 24, 2006, within the District of Columbia, Carlos M. Eady, *having previously been released pursuant to the provisions of Title 23 of the District of Columbia Code in Superior Court Case Number 2005FEL005167,* committed while so released the crime of carrying a pistol without a license, a felony, as set forth in the first count of this indictment. (Offenses Committed During Release, in violation of 23 D.C.Code, Section 1328(a)(1))

(emphasis added.)

During appellant's trial, the trial court and the prosecutor referred to appellant's prior felony conviction and release status several times. *First,* during the preliminary instructions to the jury, the trial court stated:

As you know already this is a criminal case that's been brought by the United States and the defendant, Carlos Eady, is charged by indictment with four counts: Carrying a pistol without a license *with a prior felony,* possession of an unregistered firearm, unlawful possession of ammunition, and *an offense committed during release on another case.*

(emphasis added.)

*Second,* the prosecutor emphasized the fact of appellant's prior conviction and oth-

ing offense, *Confredo,* 528 F.3d at 153 (citing *United States v. Gonzalez,* 420 F.3d 111, 128–29 (2d Cir.2005)), whereas others consider whether the "actual sentence imposed" exceeds the maximum allowed for the underlying offense. *United States v. Ellis,* 241 F.3d 1096, 1104 (9th Cir.2001). In this case, appellant was exposed to an additional consecutive sentence of one to five years for committing CPWL while on release, over and above the five year maximum for CPWL, but he was actually sentenced to twenty-six months (twenty months for CPWL and six months for the enhancement), and three years of supervised release, with execution of the additional six months and supervised release suspended in favor of a twelve-month period of probation.

er criminal prosecution during opening statement:

> Ladies and gentlemen, the evidence and testimony in this case will prove to you beyond a reasonable doubt the following: That on February 24th, 2006, in the 5200 block of Clay Street, Northeast, the defendant carried a loaded pistol.
>
> And that pistol was functioning or operable, which means it was capable of firing a bullet. That the defendant didn't have a permit to carry a pistol, that the firearm that he carried wasn't licensed in the District of Columbia and that the ammunition involved in carrying that pistol was not—
>
> *Additionally, the evidence will show you that at the time of the commission of these three offenses, the defendant had a previous felony conviction. The evidence will also show you that at the time of the commission of this offense, the defendant was currently on release in another case here in Superior Court.* And so when you've heard all the testimony and you've seen all the evidence in this case, I'm gonna come back to you and I'm gonna stand right here and I'm gonna ask you to return the only verdict that the evidence in this case supports, and that's to find the defendant guilty on all four counts of the indictment.

(emphasis added.)

*Third,* the prosecutor presented the parties' stipulations to the court in the presence of the jury:

[T]he government and the defense have entered into two stipulations of facts in this case. The first is that the parties stipulate that at the time of these alleged offenses *the defendant had a previous felony conviction.*

The second stipulation is the defense and the government have stipulated that at the time of these alleged offenses ... *the defendant was on release in a pending criminal case* in the District of Columbia Superior Court. The docket number was 2005 FEL 5167.

(emphasis added.)

*Fourth,* after the evidence had been presented, the trial judge instructed the jury that "one of the essential elements" of CPWL is whether, "at the time of the commission of the offense of carrying a pistol without a license, the government has proven beyond a reasonable doubt that the defendant had previously been convicted of a felony." The trial judge also instructed the jury that they would need to find that appellant was previously released in a separate criminal proceeding to convict him of committing an offense while on release.[12]

*Fifth,* the prosecutor emphasized appellant's prior conviction and release status during his closing argument, which he commenced as follows:

> I want to start with two things that aren't in dispute in this case. And that

12. The judge instructed in relevant part,

> The essential elements of the offense of carrying a pistol without a license, each of which the government must prove beyond a reasonable doubt, are:
>
> . . . .
>
> 6. At the time of the commission of the offense of Carrying A Pistol Without A License, the government has proven beyond a reasonable doubt that the defendant had previously been convicted of the felony. . . .

> The essential elements of Offenses Committed During Release, each of which the government must prove beyond a reasonable doubt, are:
>
> 1. That the defendant had previously been released in a separate Superior Court case; and
>
> 2. That the defendant in this case committed any of the following offenses while on release: Carrying A Pistol Without A License; Possession of An Unregistered Firearm; Possession of Ammunition.

is that during the commission of these alleged offenses the defendant was accused of a felony. We've reached a stipulation, that is not in dispute.

The second thing is that during the commission of these alleged offenses, the defendant was on release in a pending criminal case to D.C. Superior Court. Just take those and set them aside. They're not in dispute in this case. Those have been agreed to by stipulation.

*Sixth,* just before the jury began deliberations, the trial judge reminded the jury about the stipulations concerning appellant's prior felony conviction and release status when he committed the offenses charged in this case:

I have one, one additional instruction that I might have given previously or that I did give previously at trial. But I want to repeat again because there was mention made during the closing arguments of, about stipulations. And let me tell you again that the government and the, and the defendant in this case have agreed, they have stipulated on, on two different stipulations. Those are written out, are they not, at this point?

The prosecutor then confirmed that written copies of the stipulations would be given to the jury, and the trial court added: "So you'll see, you'll actually see them. But again, what a stipulation is, is an agreement as to certain facts. Any stipulation of fact, the two, in other words, the two that you have here, are, should be considered to be undisputed evidence and you may consider it as proven."

### B. Prejudice to Appellant

■ This court has long adhered to the principle that "evidence of one crime is inadmissible to prove disposition to commit [a] crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose." *Drew v. United States,* 331 F.2d 85, 89–90 (D.C.Cir. 1964); *see Johnson v. United States,* 683 A.2d 1087, 1092 (D.C.1996) (en banc). Evidence of a prior conviction "is always ... prejudicial to a defendant. It diverts the attention of the jury from the question of the defendant's responsibility for the crime charged to the improper issue of his bad character." *United States v. Jones,* 67 F.3d 320, 322 (D.C.Cir.1995) (analyzing the prejudice that results from informing the jury of the nature of defendant's prior felony conviction in a prosecution for being a felon in possession of a firearm). Appellant argues that the trial court erred in permitting the jury to hear about his prior crimes, and that he suffered prejudice as a result.

■ The parties agree that our review is limited to plain error.[13] Therefore, we will reverse appellant's conviction only if he can show: (1) that there was error; (2) that the error was "plain"; and (3) that the error affected his substantial rights. *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In addition, appellant must demonstrate that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736, 113 S.Ct. 1770.

■ As we have discussed, the trial court erred in admitting the evidence of appellant's prior conviction and release

---

**13.** As mentioned earlier, at trial defense counsel did mention that appellant's release status was an enhancement factor for sentencing, but he did not challenge the court's mistaken application of *Apprendi.*

status on another criminal case, and the error should have been clear to the court under *Apprendi* (with respect to the prior conviction) and because appellant had stipulated to these facts; therefore, the first two prongs of the plain error test have been met. For the reasons that follow, we conclude that the remaining elements of the plain error test also are satisfied.

### 1. The Error Affected Appellant's Substantial Rights

For purposes of plain error review, substantial rights will have been affected if the error has had "a prejudicial effect on the outcome of a judicial proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). Therefore, " '[i]n cases where the burden of demonstrating prejudice (or materiality) is on the defendant seeking relief, [the Supreme Court has] invoked a standard ... requiring [that], but for [the error claimed], the result of the proceeding would have been different.' " *Arthur v. United States*, 986 A.2d 398, 413 (D.C. 2009) (quoting *Dominguez Benitez*, 542 U.S. at 81–82, 124 S.Ct. 2333); *see also Thomas v. United States*, 978 A.2d 1211, 1237 (D.C.2009).

In this case, there were two prejudicial facts that were repeatedly presented to the jury: (1) that appellant had previously been convicted of a felony; and (2) that appellant had committed the charged crimes while on release in another felony prosecution.[14] Thus, the jury knew that appellant had committed at least one serious crime in the past, and that he had allegedly committed another serious crime

close in time to the offenses charged in these proceedings. The prosecutor informed the jurors that appellant was only twenty-one years old at the time of trial, from which jurors could easily infer that he had been the subject of at least two serious criminal prosecutions in the relatively recent past. In addition, although it did not spell out the nature of the prior felony conviction, the indictment that was read to the jury included a reference to the same code section, D.C.Code § 22–4504(a), which could have led the jury to think appellant had previously been convicted of the same offense of CPWL.

The jury learned about these facts as early as the *voir dire*, when the trial court explained the counts in the indictment and then read the entire indictment aloud. "[T]he Supreme Court [has] identified *voir dire* as a 'critical stage of the criminal proceeding' because '[j]ury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or *predisposition about the defendant's culpability.*' " *United States v. Coleman*, 552 F.3d 853, 856–57 (D.C.Cir. 2009) (quoting *Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989)) (emphasis added). In *Coleman*, the D.C. Circuit reversed a conviction for possession of a firearm as an ex-felon, in violation of 18 U.S.C. § 922(g), because the district court improperly read the unredacted indictment to the jury venire and thereby informed them that the defendant had previously been convicted of "a crime of violence, that is, robbery with a deadly weapon."[15] *Id.* at 857. Reviewing

---

14. The indictment identified the criminal case on which appellant was on release status when he committed the charged offenses as "Superior Court Case Number 2005FEL005167." It is possible that some

jurors might recognize the "FEL" designation as a felony case.

15. Unlike the enhancement provisions at issue in this appeal which are to be considered by the judge at sentencing, 18 U.S.C. § 922(g)

for plain error, the D.C. Circuit concluded that:

> The voir dire error was not harmless because its effect was to bolster Officer Boteler's testimony and discredit appellant's where police officer credibility lies at the heart of the case. . . . In closing argument, the prosecutor emphasized that "the only thing at issue . . . [was] where [the] gun came from, [and] whose gun was it," and that "this case is about credibility." Appellant challenged the officer's testimony on cross-examination, and in his own case underscored the degree to which the government's case turned on Boteler's credibility. . . . [A]ppellant's defense denying gun possession was doomed by the reading of the unredacted indictment stating he had previously been convicted of armed robbery. . . . [T]here was no independent corroborating evidence. . . . Consequently, the government's evidence was not "strong," much less overwhelming.

*Id.* at 860 (internal citations and some quotations omitted). The D.C. Circuit's conclusion was based upon the premise that "manifest prejudice can result when the jury is informed of a prior conviction that is similar to the charged offense." *Id.*

We reach the same conclusion in this case. Appellant was charged with several weapons offenses. In this case, the jury was not expressly told, as in *Coleman*, that the defendant's prior conviction was also for a weapon-related offense, but the language of the first count of the indict-ment made crystal clear that appellant had been convicted either for CPWL, under the same statutory provision, D.C.Code § 22–4504(a), as the current charge, or for a felony. The jury was also informed that appellant was charged with committing CPWL while on release in another criminal prosecution—and that appellant had agreed to both facts concerning other crimes by stipulation. Appellant's other crimes were brought to the jury's attention not only during *voir dire,* as in *Coleman,* but as described in the previous section, also at six different times throughout the course of appellant's trial. Thus, for example, the prosecutor referred to appellant's prior felony conviction and release status during opening statement and closing arguments, and the jury received written copies of appellant's stipulations admitting to the prior felony conviction and release status when they retired to deliberate. In final instructions, the judge reminded the jury of the prior felony conviction and the other charge, and referred to them as "not in dispute." Appellant's other crimes, in short, were among the first facts that the jury learned and the last mentioned before deliberations began. The repetition of this prejudicial information, concentrated during a short trial, cannot have escaped the jury's notice.[16]

The trial court's and the prosecutor's irrelevant and improper multiple references to appellant's other crimes cannot be

---

(possession of a firearm by an ex-felon) requires that the government prove that the defendant has a prior felony conviction as part of its case-in-chief. *See Old Chief,* 519 U.S. at 174, 117 S.Ct. 644. In *Coleman,* appellant had stipulated to the fact that he had a prior conviction, but not to the details of that conviction. By reading the indictment, the trial judge impermissibly informed the jury that the prior conviction was also for

an offense involving weapons. 552 F.3d at 857.

16. The jury was sworn in on August 20, 2007, and the judge issued preliminary instructions at 3:33 p.m. that day. The jury reconvened at 11:25 a.m. on August 21, 2007, and heard testimony until 4:43 p.m. including a one-hour break for lunch. The jury heard final instructions and closing arguments for approximately one hour on August 22, 2007.

reconciled with this court's assertion that "[i]t is fundamental to a system of criminal justice based on the presumption of innocence, that the process of adjudication be insulated from evidence of past criminal or wrongful conduct of an accused other than the charged offense." *Campbell v. United States*, 450 A.2d 428, 430 (D.C.1982). As we have explained, " '[t]he accused in fairness can only be expected to meet the accusations of the indictment, and is favored throughout with the presumption of innocence of even those accusations. The real meaning of this rule is that *evidence of collateral offenses must never be received as substantive evidence of the offense on trial.* '" *Bishop v. United States*, 983 A.2d 1029, 1039 (D.C.2009) (emphasis added) (quoting *Martin v. United States*, 127 F.2d 865, 869 (D.C.Cir.1942) (Stephens, J., concurring) (reversing where photo array included a mug shot of the defendant that indicated he had a criminal record)). Here, the drumbeat references to appellant's other crimes undermined appellant's right to be presumed innocent, until proven guilty, of the offenses for which he was facing trial.

Moreover, these other crimes "doomed," *Coleman*, 552 F.3d at 860, appellant's defense that he did not possess the firearm and that, even if he did so temporarily when he picked it up, the possession was "innocent." *See Bieder v. United States*, 707 A.2d 781, 782 (D.C.1998). Here, as in *Coleman*, appellant's defense required the jury to weigh the credibility of Detective Battle's testimony that appellant picked up the weapon that, the government argued, he had dropped on the ground and left in the alley only because he heard police sirens signaling the approach of officers, against defense counsel's argument that appellant happened upon the weapon in the alley and that any actual possession of the weapon was without "criminal purpose." It strains our understanding of human nature to believe that the jury would have been able to assess appellant's defense objectively after having been told of the prior felony conviction (possibly for the same CPWL offense) and a separate criminal prosecution, which were "not in dispute." *See Jones*, 67 F.3d at 325 (explaining that once the jury learned that the defendant had previously been convicted of a nearly identical crime, his "defense was doomed"). The prosecutor must have understood the extent to which this information would undermine appellant's defense, and took full advantage of the court's ruling, mentioning the other crimes during opening statement and closing arguments.

This prejudice, we conclude, likely affected the verdict. Although the government's evidence was "sufficient" to convict appellant, it was not overwhelming. *See Wheeler v. United States*, 930 A.2d 232, 246 (D.C.2007) (reversing on plain error review and noting that "although it was sufficient to convict, the evidence was not overwhelming"); *Jones*, 67 F.3d at 325 ("Although we have no reservation in concluding that [appellant's] challenge to the sufficiency of the government's evidence is meritless ... there was still room for [his] defense ....."); *see also Coleman*, 552 F.3d at 859 ("[I]t is reversible error for the district court to read to the jury the unredacted indictment referring to the prior felony offense where the defense has offered to stipulate felon status and ... the government's evidence of guilt is not 'strong.' "). The government's case hung on the credibility of Detective Battle, the only person who claimed to see appellant handle the gun. Even his testimony, however, left room for doubt about appellant's criminal intent. In particular, Detective Battle testified on cross-examination that appellant held the weapon for "seconds" and that it "definitely wasn't over a min-

ute." Detective Battle also admitted that the PD–163 form that he completed when he returned to the police station after appellant's arrest does not state that appellant attempted to put the pistol in his pocket before he dropped it on the ground. Both of these statements supported appellant's defense of "innocent" possession. In addition, the statements made by appellant's mother, which provided the foundation for the government's argument that appellant had brought the weapon outside from his home, were admitted primarily through the testimony of Detective Battle because appellant's mother did not testify at trial. The jury was, therefore, required to carefully assess the credibility of Detective Battle's testimony, which in addition to being inconsistent with the PD–163 report, was impeached in part by the fact that he and Officer Jordan disagreed on whether the officers searched appellant when they first encountered him on the street.

There was no physical evidence tying appellant to the gun Detective Battle found in the alley. Appellant did not have a gun when he was patted down by the officers who encountered him on the street, as Officer Royster testified. Appellant's fingerprints were not found on the gun or on the bullets inside the gun that Detective Battle found in the alley, right after, he said, appellant had handled it. Even though Officer Royster testified that he had "never" recovered fingerprints from the type of polymer plastic handle on the Glock that was found in the alley, he did state that "roughly about 11, 12 percent" of the time he was able to recover

fingerprints from copper or brass cartridges like the ones that were found in the gun. Thus, a juror could have had a doubt based on the absence of appellant's fingerprints on the bullets. Indeed, it appears that at least one juror might have been puzzled by the fact that appellant allegedly "possessed" the weapon even though his fingerprints were not found on the bullets.[17]

Finally, appellant's "agitated" demeanor on the street, which the prosecutor emphasized during closing argument,[18] might have been explained by the argument appellant had with his mother—which appellant did not deny—and the sudden approach of at least four police officers on the street. As Detective Battle explained, there were enough officers present that he "felt pretty secure," and for that reason he did not search appellant on the street even though he thought that appellant likely had a gun. It would be reasonable to conclude that appellant, in contrast, did not feel "secure" when the group of officers surrounded him and that his agitation was due to emotions and stress unrelated to criminal guilt, that arose from his own condition and confrontation with the officers.

In conclusion, in light of the repeated unnecessary disclosure of appellant's other crimes to the jury, we conclude that there is a "reasonable probability" that the improper evidence and references to other crimes might have influenced the jury to find that appellant was guilty of the weapons offenses charged in this case. We note that the jury appears to have strug-

---

**17.** The juror submitted a note that asked, "A customer can and most of the time does buy magazines with bullets already loaded?"

**18.** The prosecutor stated: "Do you recall that the first time that Detective Battle came into contact with the defendant is when they walked back across on 53rd Street? He

stopped him and talked to him. And you'll recall Detective Battle's testimony is the defendant was, he was breathing heavily, he was sweating, he was acting nervous. In fact, Detective Battle put his hand on him, felt his heart racing, did he need medical attention?"

gled with the case, deliberating for a longer period of time than it took the government to present its evidence. Therefore, appellant's substantial rights were affected by the conceded error in admitting the evidence of other crimes.[19]

### 2. The Error Affected the "Fairness, Integrity or Public Reputation" of Judicial Proceedings

The type of prejudice that resulted from the trial court's error strikes at one of the most fundamental principles of criminal law—the presumption of innocence—and undermined appellant's defense. Over one hundred years ago, the Supreme Court explained that "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895) (quoted in part in *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)); *see Campbell*, 450 A.2d at 430 (same). This "presumption of innocence lies at the heart of the rule[] ... against admission of ... evidence of unrelated other crimes." *Bishop*, 983 A.2d at 1039.

■ Where, as here, the jury is unnecessarily informed of the defendant's prior crimes at the beginning of trial, and then both the trial court and the prosecutor proceed as though this information is an integral part of the government's case-in-chief, there are two pernicious effects. First and most basic, the error infects the trial as a whole, making it difficult (if not impossible) for the jury to view the government's charges against defendant impartially, and based only on the properly admitted evidence of the charged criminal conduct. Instead, the jury is apt to think that because the defendant is known to have committed crimes in the past, he is likely to have committed the charged crimes as well. In short, the defendant is prevented from appearing before the jury clothed in the presumption of innocence. Second, when the defendant's other crimes are improperly put before the jury as though they were facts to be proven by the prosecution, and an element of the offense the jury needs to find as part of the verdict, the jury's attention is focused on the other crimes evidence. When the prosecution appears to have easily met its burden of proving these "elements" of the charged crimes (here, by reference to the stipulation), the contested evidence of the elements the government does need to prove to the jury may be enhanced in the eyes of the jury. In short, the error pervades the trial, undermining the presumption of innocence, risking that the defendant will be judged guilty based on past conduct or crimes, while, on the other hand, the government's case might be strengthened in the eyes of the jury for reasons other than the force of the evidence to meet the prosecution's formidable burden to prove guilt beyond a reasonable doubt. Few outcomes could differ more from a "fair" judicial proceeding in the eyes of the public.

For these reasons, we conclude there was plain error. Accordingly, the judg-

---

19. No limiting instruction was given to delineate the impermissible uses of the other crimes evidence. We doubt, however, that such an instruction could have meaningfully cured the impermissible prejudice resulting from inadmissible evidence. *Cf. Bishop*, 983 A.2d at 1040 (" 'Cautionary instructions ... are designed primarily to blunt permissible prejudice, i.e., to prevent an inference of criminal record when [mug shots] are properly admitted for a valid purpose such as identification. They cannot cure impermissible prejudice.' " (quoting *Williams v. United States*, 382 A.2d 1, 7 (D.C.1978))).

ment of conviction is reversed and the case is remanded for a new trial.

*So ordered.*