*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CF-798


MAXIM REGAN SMITH, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF3-11615-18)

(Hon. Kimberley S. Knowles, Trial Judge)


(Argued January 11, 2022                    Decided August 11, 2022)


*Justin A. Okezie* for appellant.

*Anne Y. Park*, Assistant United States Attorney, with whom *Michael R. Sherwin*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *John P. Mannarino*, *Jack Korba*, and *Alyse Constantinide*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, BECKWITH, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:  Appellant Maxim Regan Smith appeals from his convictions for assault with a dangerous weapon and assault with significant bodily injury while armed.  We affirm.

**I.**

In sum, the evidence at trial was as follows. Mr. Ketchazo Paho was driving when he saw Mr. Smith stopped on a bicycle in the middle of the street. Mr. Paho honked at Mr. Smith, who did not respond. Mr. Paho then drove safely around Mr. Smith. Mr. Smith nevertheless yelled at Mr. Paho. When Mr. Paho drove past Mr. Smith, Mr. Smith hit Mr. Paho's car, causing a loud bang. Mr. Paho drove a short distance, pulled over, called 911, and got out of his car to inspect for damage.

Mr. Smith rode by Mr. Paho, stopped some distance away, and yelled, "are you calling the cop[s], [n-word]?" Mr. Smith is white and Mr. Paho is Black. Mr. Smith then rode his bike toward Mr. Paho, yelling loudly and continuing to call Mr. Paho the n-word. When Mr. Smith got within a foot of Mr. Paho, Mr. Paho grabbed the handlebars of Mr. Smith's bicycle, trying to keep Mr. Smith on the scene until the police arrived. Mr. Smith then hit Mr. Paho in the hand, forearm, and head with a metal bike lock. Mr. Smith continued to call Mr. Paho the n-word. Mr. Smith got off the bicycle and tried to get into Mr. Paho's car, but Mr. Paho was able to prevent that. Mr. Paho did not threaten or touch Mr. Smith during the incident.

Mr. Paho was bleeding profusely, and he went to the hospital and received twenty-one stitches in the head.

Mr. Smith was arrested on the scene. He told the police on the scene that Mr. Paho had not touched him.

At trial, Mr. Smith testified to a somewhat different version of events. According to Mr. Smith, Mr. Paho drove up behind Mr. Smith, honked at him, and came dangerously close to sideswiping him. Mr. Paho then drove around Mr. Smith, and Mr. Smith tapped the back of the car with his hand. Mr. Paho pulled over, and Mr. Smith at first rode by. Mr. Smith circled back, however, after Mr. Paho yelled that he was calling the police because Mr. Smith had damaged the car. The two then got in a verbal argument, standing within two to three feet of each other. Mr. Smith called Mr. Paho the n-word, in order "to emotionally hurt him." Mr. Smith acknowledged that he had previously falsely denied using the n-word during the incident, but he testified that he had denied using the n-word because he was ashamed that he had used that word. Mr. Smith acknowledged having used the word to another Black person in a later incident.

During the argument, Mr. Paho grabbed Mr. Smith's wrist and bicycle and threatened Mr. Smith. Mr. Smith then hit Mr. Paho's hand twice with a bicycle lock. Mr. Paho still did not let go of Mr. Smith's wrist, so Mr. Smith hit Mr. Paho with the lock once in the head.

## II.

The United States charged Mr. Smith with committing assault because of racial bias. D.C. Code § 22-3703 (person found guilty of bias-related crime may be imprisoned for up to 1-1/2 times otherwise applicable maximum term of imprisonment). That issue was submitted to the jury, which was unable to reach a unanimous verdict on the issue.

In the trial court, Mr. Smith wanted to prevent the jury from hearing evidence of his use of the n-word. Mr. Smith therefore requested that the trial court either (1) itself decide whether the assault was racially motivated; or, failing that, (2) inform the jury that Mr. Smith stipulated that the assault was racially motivated. Mr. Smith also asked the trial court to "sanitize" the evidence of the use of the n-word. The trial court denied those requests.

## A.  Background

Several of Mr. Smith's arguments on this issue rest on the premise that the bias enhancement is a sentencing factor rather than an element of an aggravated crime.  We disagree with that premise.

The legislature has authority to establish crimes and define their elements. *See, e.g.*, *Lewis v. United States*, 138 A.3d 1188, 1192 (D.C. 2016) ("[I]t is a well-established principle that the definition of the elements of a criminal offense is entrusted to the legislature . . . .") (internal quotation marks omitted).  Criminal defendants generally have a constitutional right to a jury trial at which the prosecution bears the burden of proving all elements of each charged offense beyond a reasonable doubt.  *See, e.g.*, *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, [the defendant's] guilt of every element of the crime with which [the defendant] is charged.").  There is an exception to the jury-trial right for petty offenses, but the assault charges in this case do not fall within that exception.  *See Bado v. United States*, 186 A.3d 1243, 1248 (D.C. 2018) (en banc) (offenses punishable by over six months' imprisonment are serious rather than petty for purposes of constitutional right to jury trial); D.C. Code § 22-402 (assault with

dangerous weapon punishable by up to ten years' imprisonment); D.C. Code §§ 22-404(a)(2), 22-4501(1A), 22-4502(a)(1), 23-1331(4) (assault with significant bodily injury while armed punishable by up to thirty years' imprisonment). Mr. Smith thus had a constitutional right to have the jury determine his guilt or innocence of the assault charges in this case. Mr. Smith also had a statutory right to a jury trial on those charges. D.C. Code § 16-705(a).

Within certain constitutional limits, the legislature can direct sentencing judges to consider additional circumstances, not found by the jury, when imposing sentencing. *See, e.g.*, *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998) (Congress permissibly authorized sentencing judges to impose harsher sentences on defendant with prior convictions, even though prior conviction was not treated as element and tried to jury); *United States v. Haymond*, 139 S. Ct. 2369, 2377-78 & n.3 (2019) (subject to narrow exceptions, including that reflected in *Almendarez-Torres*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . must be submitted to a jury, and proved beyond a reasonable doubt") (brackets and internal quotation marks omitted).

The legislature is not always explicit as to whether it intends a circumstance to be treated as an element and therefore determined by the fact-finder who

adjudicates guilt or innocence, or instead to be treated as a sentencing factor and therefore determined by the sentencing judge. In such cases, the court must resolve that issue as a matter of statutory interpretation. *See, e.g.*, *Fields v. United States*, 547 A.2d 138, 140-41 (D.C. 1988) (holding as matter of statutory interpretation that "senior citizen penalty enhancement" statute, D.C. Code § 22-3901 (now codified at D.C. Code § 22-3601), is element that must be proven to jury beyond reasonable doubt).

We conclude as a matter of statutory interpretation that the bias enhancement operates as an element of an aggravated offense to be found by the jury, not as a sentencing enhancement to be determined by the sentencing judge. We so conclude for two reasons. First, the bias enhancement applies by its terms only to persons who have been "found guilty of a bias-related crime." D.C. Code § 22-3703. The reference to a finding of guilt clearly indicates that the legislature intended the determination whether a crime was bias-related to be made as part of the adjudication of guilt, not later by the sentencing judge. Second, the bias enhancement is very similar to the senior-citizen enhancement that we addressed in *Fields*. We held in *Fields* that the senior-citizen enhancement was an element, because that enhancement involved "an aggravation arising from the manner in which the crime was committed," rather than a mere historical fact such as a prior conviction. 547

A.2d at 141 (internal quotation marks omitted). The same is true of the bias enhancement, and we therefore reach the same conclusion as to that enhancement.

Mr. Smith contended at oral argument, however, that this court has previously viewed the bias enhancement as a sentencing factor rather than a legislatively established element of an aggravated crime. We disagree. The case Mr. Smith relies upon simply comments in passing that § 22-3703 provides "enhanced punishment for persons convicted of bias-related crimes." *Aboye v. United States*, 121 A.3d 1245, 1248 (D.C. 2015). That comment is not a holding and in any event does not draw a clear distinction between elements and sentencing factors. We also note that in *Aboye* the case was tried to the judge, not the jury. *Id.* at 1248. *Aboye* therefore does not shed light on the question whether the judge or the jury should decide the bias enhancement in a case otherwise being tried to a jury.

## B. Bifurcated Trial

Mr. Smith argues that the trial court was required to bifurcate the trial, so that the jury would decide the assault charges—without hearing evidence of Mr. Smith's use of the n-word—and the trial judge would decide the bias enhancement,

presumably based on evidence introduced outside the presence of the jury. We conclude to the contrary.

Criminal defendants do not have a constitutional right to a bench trial. *Singer v. United States*, 380 U.S. 24, 34 (1965). In the District of Columbia, they also do not have a statutory right to a bench trial. Rather, District of Columbia law provides that if a defendant has a constitutional right to a jury trial, the trial "shall be by jury," unless the defendant expressly waives that right "and the court and the prosecuting officer consent thereto." D.C. Code § 16-705(a). The United States did not consent to a partial bench trial in this case, and thus Mr. Smith had no right to one. *See, e.g.*, *Goodall v. United States*, 686 A.2d 178, 183 (D.C. 1996) (holding that bifurcated trial, with trial judge deciding one element and jury deciding rest of elements, would be inappropriate; "We are not aware of any precedent that would justify such a bifurcation of a criminal charge . . . ."); *cf. Blakely v. Washington*, 542 U.S. 296, 310 n.12 (2004) (agreeing that "States are not required to give defendants the option of waiving jury trial on some elements but not others") (emphasis omitted).

We are not persuaded by Mr. Smith's arguments to the contrary. First, Mr. Smith argues that his claimed right to a bifurcated trial is supported by this court's decisions in *Eady v. United States*, 44 A.3d 257 (D.C. 2012), and *Williams v. United*

*States*, 137 A.3d 154 (D.C. 2016). We do not view those cases as supporting Mr. Smith's argument in this case. In those cases, the jury was permitted to hear evidence that was not relevant to the legislatively determined elements of the charged crimes, but rather was relevant to matters that the legislature had intended be treated as sentencing factors: (1) a defendant's prior felony conviction; and (2) information that a defendant had been on release in another case at the time of the charged crime. *Eady*, 44 A.3d at 260, 262-63; *Williams*, 137 A.3d at 164-65. *Eady* and *Williams* arguably suggest that defendants may have the unilateral right to remove from the jury's consideration issues that the legislature wanted sentencing judges to decide but the Constitution requires a jury to decide. *See Eady*, 44 A.3d at 262 (even if Constitution requires jury to decide whether offense was committed while on release, defendant still had right to stipulate to that fact and thereby keep issue from jury). *Eady* and *Williams*, however, do not support the idea that defendants have the unilateral right to remove a legislatively established element of a crime from the jury's consideration. *Eady* and *Williams* therefore do not support Mr. Smith's claim in this case. We also note that *Eady* and *Williams* do not address the significance of D.C. Code § 16-705(a) (trial shall be by jury if Constitution so requires, unless defendant waives right to jury trial and prosecutor and trial court consent).

Second, Mr. Smith suggested at oral argument that § 16-705(a) does not prevent a defendant from unilaterally waiving proof of some elements of an offense, as long as at least one element of each offense is submitted to the jury. That suggestion is not supported by the language of § 16-705(a), has no apparent rationale, and is contrary to the reasoning of our decision in *Goodall*.

## C. Stipulation

Mr. Smith argues in the alternative that the trial court should have required the prosecution to accept a stipulation that the assaults were bias-related, thereby preventing the jury from hearing the evidence that Mr. Smith called Mr. Paho the n-word. Generally, "a criminal defendant may not stipulate or admit [the defendant's] way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997); *see also Rollerson v. United States*, 127 A.3d 1220, 1229 (D.C. 2015) ("[T]his court has held that except in very limited circumstances, a party may not be forced to accept a stipulation in lieu of testimonial or tangible evidence."; "Live testimony or tangible evidence offers so many significant advantages over a stipulation that we think it would be grossly unfair for a court to force a party to rely on the latter rather than the former, for a stipulation will almost never have the same probative value and persuasive

power as the testimony of a live witness or a tangible object.") (internal quotation marks omitted). Requiring a stipulation rather than permitting direct proof would have been particularly unwarranted in this case, because, as the trial court ruled, evidence of Mr. Smith's use of the n-word was independently relevant to the assault charges, providing evidence relevant to motive and self-defense. *See, e.g.*, *Lazo v. United States*, 930 A.2d 183, 185 (D.C. 2007) ("[T]he presence or absence of a motive on the part of the defendant which might tend to commission of . . . a criminal deed may always be considered by the jury on the question of whether [the defendant] did commit it.") (brackets and internal quotation marks omitted).

## D. Prejudice/Probativeness Balancing

Finally, we hold that the trial court did not abuse its discretion by refusing as a matter of evidence law to prevent the jury from hearing evidence that Mr. Smith called Mr. Paho the n-word. Relevant evidence may be excluded only when "its probative value is substantially outweighed by the danger of unfair prejudice." *Johnson v. United States*, 683 A.2d 1087, 1099 (D.C. 1996) (en banc) (internal quotation marks omitted). "We recognize that the evaluation and weighing of evidence for relevance and potential prejudice is quintessentially a discretionary

function of the trial court, and we owe a great degree of deference to its decision." *Id.* at 1095.

The trial court reasonably concluded that danger of unfair prejudice did not substantially outweigh the probative value of admitting evidence of Mr. Smith's use of the n-word. That evidence was highly relevant to the charged crimes. The evidence was central to the question whether Mr. Smith's assault was racially motivated. Moreover, as previously noted, the evidence was also relevant to the jury's understanding of the circumstances of the alleged assaults. In sum, as the Supreme Court has explained, "[p]eople who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." *Old Chief*, 519 U.S. at 189.

We do not find Mr. Smith's contrary arguments persuasive. First, Mr. Smith argues that the trial court erroneously commented that the n-word is not offensive in every context. We see no basis for reversal on this point. It is unquestionable that the n-word is deeply offensive. The trial court's comment, however, was largely irrelevant to the issue before the trial court. The trial court acknowledged that the

n-word was offensive to many people. The trial court did not dispute that the n-word was offensive in the context in which it was alleged to have been used in this case. Rather, the trial court permissibly ruled that evidence that Mr. Smith had used the n-word was admissible as evidence that the assault was racially motivated and as direct evidence of the assault.

Second, Mr. Smith argues that the trial court did not do enough to minimize unnecessary prejudice due to repeated use of the "n-word." We do not agree, however, with Mr. Smith's contention that such evidence was given undue emphasis at trial.

## III.

Mr. Smith challenges the trial court's ruling that the United States could cross-examine Mr. Smith about the later incident in which Mr. Smith used the n-word to refer to a Black person. We see no abuse of discretion.

Mr. Smith testified that he was ashamed of his use of the n-word in this case. He further testified that his shame had led him to falsely deny having done so. On cross-examination, the United States asked whether Mr. Smith had subsequently

used the n-word to another Black person.  Mr. Smith objected, arguing that someone could say the n-word twice and still be ashamed of each use of the word.  The United States argued that the subsequent incident was relevant to Mr. Smith's assertion that he was ashamed of using the n-word.  The trial court overruled the objection, but limited the United States to a single question and prohibited the United States from mentioning that Mr. Smith had used the word against a Black motorist.  Although the trial court acknowledged that someone could possibly be ashamed of both incidents, the trial court did not see that possibility as a basis for entirely excluding evidence of the second incident.  In response to the United States's question, Mr. Smith acknowledged that he had used the n-word in the second incident.

The trial court reasonably found that evidence of Mr. Smith's use of the n-word in the second incident was probative of the credibility of Mr. Smith's testimony that he was ashamed of having used the n-word in the incident at issue in this case. The trial court also carefully limited the evidence concerning the second incident. We are satisfied that the court sufficiently curtailed the use of the evidence to avoid undue prejudice.

Mr. Smith argues that the trial court erred because the evidence at issue was not admissible under the doctrine of curative admissibility, which would have

required that Mr. Smith have first introduced inadmissible evidence. We do not view this as an issue of curative admissibility. Rather, the issue for the trial court was whether the question the United States sought to ask was permissible given Mr. Smith's testimony. *See generally, e.g.*, *Kinard v. United States*, 635 A.2d 1297, 1306 (D.C. 1993) (prosecutor "may cross-examine . . . about the facts asserted by a defendant in testimony").

**IV.**

Mr. Smith also challenges the jury instruction on defense of property. We conclude that any error was harmless beyond a reasonable doubt.

The trial court instructed the jury on defense of property as follows: "A person is justified in using reasonable force to protect his property from misuse when he reasonably believes that his property is in [immediate] danger of unlawful taking or misuse and that the use of such force is necessary to avoid the danger." Mr. Smith objected to this instruction, arguing that the jury should be instructed that "trespass" or "interference" could give rise to a successful claim of defense of property. The trial court denied that request.

We do not decide whether the instruction was erroneous or what harmless-error standard would apply, because we conclude that any error was harmless beyond a reasonable doubt. *See generally Chapman v. California*, 386 U.S. 18, 24 (1967) (constitutional error generally does not require reversal if government can establish that error was "harmless beyond a reasonable doubt").

We see no reasonable possibility that the jury verdict was affected by the instruction's use of the term "misuse" rather than "trespass" or "interference." Mr. Smith's defense-of-property theory rested on Mr. Paho's grabbing of Mr. Smith's bicycle. The instruction as given permitted Mr. Smith to argue that Mr. Paho had unjustifiably grabbed, and thus misused, Mr. Smith's bicycle. Yet, Mr. Smith only made passing reference to the defense-of-property theory in closing arguments. In closing argument, the prosecutor did not argue that Mr. Paho's conduct was not "misuse." Rather, the prosecutor focused on the lack of proportionality in Mr. Smith's use of force against Mr. Paho. We see no reason to believe that the jury's verdict would have been different if the jury instruction had included the term "interference" or the term "trespass." In sum we are satisfied beyond a reasonable doubt that any instructional error was harmless.

The judgment of the Superior Court is therefore

*Affirmed.*