Kevin L. MAGRUDER, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CM–1196.

District of Columbia Court of Appeals.

Argued Feb. 7, 2013.
Decided March 14, 2013.

---

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and FARRELL, Senior Judge.

FARRELL, Senior Judge:

A jury found appellant guilty of distribution of marijuana and possession of marijuana with intent to distribute it (PWID). D.C.Code § 48–904.01(a)(2)(B) (2001). According to evidence credited by the jury, police observed appellant and his partner sell a ziplock bag of marijuana to a customer on the street. The police then approached the pair and, when they fled, pursued them into a nearby apartment where the officers recovered additional bags of marijuana in plain view from a couch and money—apparent drug sale proceeds—from under a bed mattress, having obtained the tenant's permission to search. At sentencing the trial judge, after finding that appellant had a prior conviction for PWID, sentenced him to a suspended term of twelve months' imprisonment for each of the twin offenses, to run concurrently.

We affirm the convictions, and publish this opinion mainly to reject appellant's argument that observing a sale of a small amount of marijuana—potentially a "misdemeanor"—does not justify entry of a dwelling by police otherwise in lawful hot pursuit to arrest the seller.

R. Michael LaBelle, Washington, for appellant.

David C. Rybicki, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Suzanne Grealy Curt, and Jonathan Kravis, Assistant United States Attorneys, were on the brief, for appellee.

## I.

Appellant's first argument on appeal is that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the jury, not the judge, should have been allowed to decide whether he had the prior PWID conviction resulting in his felony sentences.[1] *Apprendi* itself and our

---

1. D.C.Code § 48–904.01(a) provides in part:

(2) Any person who violates this subsection with respect to:

        \*        \*        \*

(B) Any other controlled substance classi-

decision in *Eady v. United States*, 44 A.3d 257 (D.C.2012), defeat this argument.

■ *Apprendi* held that, "*[o]ther* than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). In so holding, the Court "treat[ed] . . . as a narrow exception to the general rule [requiring jury submission]," *id.*, its prior conclusion in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that a prior conviction (there for an "aggravated felony" under 8 U.S.C. § 1326) is not an element of the charged offense but rather a "sentencing factor" permitting the judge to impose greater punishment after conviction for the offense charged. 523 U.S. at 234–35, 118 S.Ct. 1219. In *Eady, supra*, we applied the *Apprendi* exception to hold that the trial court had erred prejudicially in concluding that *Apprendi* required him to submit to the jury the issue of whether the defendant had a prior felony or firearms conviction under D.C.Code § 22–4504(a)(2)

(2001), which allows enhanced punishment of a defendant with that conviction who commits the offense of carrying a pistol without a license. *See* 44 A.3d at 261.

Appellant makes no serious effort to distinguish *Eady*, and tries to avoid *Apprendi's* special treatment of prior convictions by asserting that "the existence of the prior [conviction] is an *element* of the offense of felony distribution of a controlled substance and PWID" (Br. for App. at 33; emphasis added). But he points to nothing in the language of § 48–904.01(a)(2)(B) implying that a prior conviction is an element of those crimes.[2] Moreover, *Apprendi* saw no relevance to the jury-submission issue of whether something was an "element[ ]" or a "sentencing factor[ ]," 530 U.S. at 494, 120 S.Ct. 2348, with the single exception, dispositive here, of "the fact of a prior conviction." *Id.* at 490, 120 S.Ct. 2348. Appellant is thus left to argue that *Apprendi* effectively overruled the Court's prior decision in *Almendarez–Torres*, something the Court plainly did not say it was doing. *See* 530 U.S. at 489–90, 120 S.Ct. 2348.[3] Nor, in the years since *Ap-*

fied in Schedule I, II, or III, except for a narcotic or abusive drug, is guilty of a crime and upon conviction may be imprisoned for not more than 5 years, fined not more than $50,000, or both; except that upon conviction of manufacturing, distributing or possessing with intent to distribute 1/ 2 pound or less of marijuana, a person who has not previously been convicted of manufacturing, distributing or possessing with intent to distribute a controlled substance or attempting to manufacture, distribute, or possess with intent to distribute a controlled substance may be imprisoned for not more than 180 days or fined not more than $1000 or both. . . .

Although appellant conceded at trial that he had previously been convicted of PWID, he argues nonetheless—as he did by pretrial motion—that conflicting court judgment orders created a disputed issue of fact of whether his conviction indeed had been for PWID and not simple possession of a controlled substance.

2. Appellant mentions *Ruffin v. United States*, 25 A.3d 1 (D.C.2011), as support for his reading of the statute, but in the language he cites this court was only quoting a colloquy between the trial judge and defense counsel over whether the defendant wished to "have the 'element' of [the defendant's] prior conviction decided by the jury" or the court. *Id.* at 6 n. 7. We cited the colloquy as evidence that the defendant was on notice, for purposes of "sentence enhancement[ ]," *id.*, of the government's intent to seek an additional penalty reflecting the past conviction.

3. The Court likewise did not imply, as appellant suggests, that only an *uncontested* prior conviction was excepted from the general rule of jury-submission. While it noted that the conviction in *Almendarez–Torres* had been unchallenged, that fact was not decisive. Rather, the Court's "conclusion in *Almendarez–Torres* [had] turned heavily upon the fact that

*prendi*, has the Court implied any retreat from the *sui generis* treatment of the fact of a prior conviction. *See, e.g., Southern Union Co. v. United States*, —— U.S. ——, 132 S.Ct. 2344, 2348, 183 L.Ed.2d 318 (2012); *Shepard v. United States*, 544 U.S. 13, 24, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); *Schriro v. Summerlin*, 542 U.S. 348, 350, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

## II.

■ Appellant next argues that a presumption of prosecutorial vindictiveness arose when, on the basis of his past drug conviction, the government obtained his indictment for distribution and PWID marijuana after having charged him first with misdemeanor distribution. The prosecutor's invidious motive, he asserts, stemmed from his refusal to plead guilty in this case and to subsequent charges that arose following his re-arrest while on release, as well as from his refusal to assist the government in prosecuting, contemporaneously, a large-scale drug conspiracy. These allegations fall well short of the strict standard for identifying presumptive vindictiveness by the government in the pretrial setting.

At that stage of criminal proceedings, the Supreme Court has said, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *United States v. Goodwin*, 457 U.S. 368, 381, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).[4] And, given normal practice and the expec-

tations of the parties before trial, it is "unrealistic to assume that a prosecutor's probable response to ... [defense] motions [invoking procedural rights] is to seek to penalize and to deter." *Id.* Appellant's insistence on trial and unwillingness (as he alleges) to cooperate as part of a deal for reduced charges were customary incidents "of the adversary process," *id.*, and insufficient to generate the presumption he urges. They differ qualitatively from, for example, a prosecutor's leveling of greater charges in putative reaction to a civil suit the defendant has filed against the police, *see United States v. Mahdi*, 777 A.2d 814 (D.C.2001); and bear no resemblance to *Simms v. United States*, 41 A.3d 482 (D.C. 2012), where the majority concluded that "an accumulation of circumstances," *id.* at 491—the government's bringing new charges after (a) it had announced ready for trial, (b) the defendant then exercised his right to subpoena a witness, and (c) the court ordered a last-minute continuance for that purpose—all combined to create what the majority found was the appearance of retaliation by a prosecutor miffed at the eleventh-hour delay. Appellant's assertion of rights, by contrast, fits the "typical pretrial paradigm," *id.* at 484, and yielded no "reasonable likelihood of vindictiveness" as the cause of the increased charges. *Goodwin*, 457 U.S. at 373, 102 S.Ct. 2485.

## III.

■ Lastly, appellant challenges the denial of his motion to suppress the drugs

---

the additional sentence to which the defendant was subject was 'the prior commission of a serious crime,'" a "traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." 530 U.S. at 488, 120 S.Ct. 2348 (quoting *Almendarez–Torres*, 523 U.S. at 230, 243, 118 S.Ct. 1219); *see also id.* at 496, 120 S.Ct. 2348 (pointing out the "vast difference" between accepting the validity of a prior convic-

tion resting on, *inter alia*, proof found beyond a reasonable doubt "and allowing the judge to find the required fact under a lesser standard of proof").

4. Appellant's arrest for commission of a new crime while on release may well have contributed to the prosecutor's judgment then "crystalliz[ing]" in favor of greater charges in this case.

and money found in the apartment into which he and his partner fled on seeing the police approach them. We pass over the issue raised initially by the government of whether appellant had a protectable Fourth Amendment interest in the apartment, which belonged to a woman with whom he had had (at least) a past intimate relationship. We conclude rather that under the "hot pursuit" exception to the warrant requirement, the police were justified in pursuing appellant into the apartment after watching him jointly sell drugs and then flee.

Appellant's sole contrary argument is that the hot pursuit doctrine—a sub-species of the exigent circumstances exception to the warrant principle—applies only to pursuit of a "fleeing felon," not a misdemeanant; and that what the police observed—the sale of a single ziplock bag of marijuana—revealed nothing elevating the sale to the level of a "felony." He seeks support from such decisions as *Hilliard v. United States,* 638 A.2d 698 (D.C.1994), in which the court pointed to "[t]he hot pursuit of a fleeing felon [as] one of [the] recognized emergencies" justifying warrantless searches, and upheld the warrantless entry of an apartment there because, *inter alia,* the police had seen "the suspect distribute[ ] drugs, a felony in this jurisdiction." *Id.* at 706.

As in *Hilliard,* however, the police indeed saw appellant "distribute drugs" before he fled, and the distinction he urges, as to flight, between "felony" and "misdemeanor" distribution supposes an ability of police confronted with that exigency to assess the gravity of the wrongdoing that is wholly unrealistic. Here, for example, even if the police suspected before the chase that the ziplock appellant sold contained only marijuana ("a green weed substance," as they testified), they could not know whether he was selling from a larger stash of drugs (much less whether he was a recidivist again plying his trade), conduct "felonious" under § 48–904.01(a)(2)(B). Moreover, although in *Hilliard* the police could see "a white powdery substance" being sold, 638 A.2d at 706, and in this case they could see a green weed substance, in other observed sales the identity of the substance transferred will not be readily apparent before the seller flees.

In *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), the Supreme Court found it "difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor," *id.* at 753, 104 S.Ct. 2091; and it went on to hold the Amendment violated by the defendant's arrest there "in the privacy of his own bedroom for a noncriminal, traffic offense." *Id.* Later, in *Illinois v. McArthur,* 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), reviewing convictions for possession of drug paraphernalia and marijuana, the Court rejected the defendant's proffered equation of the traffic offense in *Welsh* and the "misdemeanor" crimes at issue in *McArthur.* The Court found significant Illinois' statutory distinction between "jailable and "nonjailable" offenses, and held that "the need to preserve evidence of a 'jailable' offense was sufficiently urgent or pressing to justify" the restriction on Fourth Amendment liberty in that case. *Id.* at 336, 121 S.Ct. 946. (That restriction, admittedly, had been the "considerably less intrusive" one of "keeping a person from entering his home" while a search warrant was obtained.)

Taking their cue partly from *Welsh* and *McArthur,* many state courts have refused to bar a finding of exigency justifying a home entry where police have observed an apparent sale of marijuana. *See State v. Ferguson,* 317 Wis.2d 586, 767 N.W.2d 187,

197–98 (2009) (collecting cases). They have read those High Court decisions to allow an entry, otherwise justified by exigency, where the underlying offense is a jailable one, as here. *See id.* at 197. Focusing on that fact instead of a legislative label ("felony" versus "misdemeanor"), the *Ferguson* court said, "provide[s] the clearest and most consistent indication of the [s]tate's interest in arresting individuals suspected of committing that offense." *Id.* (quoting *Welsh,* 466 U.S. at 754 n. 14, 104 S.Ct. 2091). Courts thus have held hot pursuit of a fleeing "misdemeanant" to be justified under circumstances analogous to those present in this case. *See, e.g., Ulysse v. State,* 899 So.2d 1233, 1234 (Fla. Dist.Ct.App.2005) ("Hot pursuit of a fleeing misdemeanant is permissible where the misdemeanor is punishable by a jail sentence."); *State v. Bell* 28 So.3d 502, 509 (La.Ct.App.2009) (rejecting argument "that a bright-line rule exists that precludes officers from pursuing an offender into a home for a crime committed in their presence simply because the underlying offense is not a felony," and affirming finding of exigency where officers observed the defendant with a marijuana "cigar"—a misdemeanor offense—and chased him into a nearby home).

Instructed by these decisions, and by the utter impracticality of appellant's proffered distinction among drug offenses generating flight, we hold that the entry of the apartment by the police in hot pursuit of appellant after seeing him sell a controlled substance comported with the Fourth Amendment.

*Affirmed.*