*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-86

RAYMOND O. WASHINGTON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-13592-12)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Argued January 27, 2015                    Decided August 13, 2015)

*Deborah A. Persico* for appellant.

*Lauren Bates*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Veronica Jennings*, Assistant United States Attorneys, and *Susan M. Simpson*, Special Assistant United States Attorney, were on the brief for appellee.

Before FISHER and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*: A jury found appellant, Raymond O. Washington,

guilty of drug offenses.[1]   He contends that (1) the trial court undermined the

---

[1]  The jury returned guilty verdicts on charges of distribution of a controlled

(continued…)

presumption of innocence and plainly erred by admitting evidence that he was on release when the drug offenses occurred; (2) his Sixth Amendment constitutional right to effective assistance of counsel was violated because his trial counsel failed to object to the admission of evidence regarding the commission of the crimes during his release on another crime;[2] and (3) some of his convictions must merge. For the reasons stated below, we affirm Mr. Washington's convictions, in part, and we remand this case to the trial court with instructions (a) to vacate his possession of liquid PCP conviction as well as his conviction on the incorrectly indicted charge of offenses committed during release, and (b) to resentence him.

## FACTUAL SUMMARY

(…continued)

substance (PCP), in violation of D.C. Code § 48-904.01 (a)(1) (2012 Repl.); possession with intent to distribute a controlled substance (PCP), in violation of § 48-904.01 (a)(1); possession of liquid PCP, in violation of § 48-904.01 (d)(2); and offenses committed during release, in violation of D.C. Code § 23-1328 (a)(1) (2012 Repl.). Mr. Washington was sentenced to concurrent terms of thirty months on the distribution charge, with all but four months suspended; thirty months on the possession with intent to distribute offense, with all but four months suspended, and eighteen months on the possession of liquid PCP charge, with all but four months suspended. He was sentenced to a consecutive term of twelve months on the offenses committed during release, with all twelve months suspended.

[2] The government acknowledges in its brief that under this court's decision in *Eady v. United States*, 44 A.3d 257, 261 (D.C. 2012), Mr. Washington "was incorrectly indicted, and subsequently convicted, 'of offenses committed during release.'" On remand, to implement the enhancement, the trial court must add a separate consecutive sentence to each underlying conviction.

To prove the drug offenses, the government presented the testimony of several Metropolitan Police Department ("MPD") officers. Investigator Clarence Brooks, a twenty-four year veteran of the MPD, worked undercover on August 3, 2012, in a "buy bust operation," in the Southeast quadrant of the District of Columbia. He was in the 4500 block of Benning Road, along with three other undercover officers, including Officer Christopher Hall. Both Officers Brooks and Hall had received pre-recorded funds with which to purchase drugs. Officer Hall saw a man named Patrick and asked, "[w]as anybody out," meaning was "anybody selling drugs." As Officer Hall walked with Patrick, Mr. Washington approached and "said, 'I have that water,'" meaning that he had PCP. Officer Hall requested "a dub," or $20.00 worth of PCP. Mr. Washington made a phone call and indicated that he needed "one." When Officer Hall informed Patrick that he did not have a cigarette (to dip into the PCP), Patrick gave him a cigarette box containing one cigarette.

Upon the arrival of a man in a Miami Dolphins jersey, Mr. Washington stated, "[h]ere's my man here." Mr. Washington declared that Officer Hall was "cool," and instructed the man to get something from his (Mr. Washington's) pocket. The man in the jersey removed a brown paper bag from Mr. Washington's

front pants pocket and directed Officer Hall to follow him. Officer Hall gave the man the cigarette box containing one cigarette, and $20.00 in pre-recorded funds. When they reached the rear of a gas station, the man in the jersey dipped the cigarette into a vial and told Officer Hall "to pull back on it," that is to "pull the fluid into the far end of the cigarette." Officer Hall made a motion to suggest he was following the instruction. He recognized the distinctive smell of PCP. He left the scene, and signaled to another undercover officer that "the buy was good." The arrest team moved in; Officer Manuelle Duvall received a radio description of the persons involved in the drug transaction. He and Officer Kevin Tyler stopped Mr. Washington who fit the description of one of the individuals.[3] Officer Duvall recovered $170.00 from the search of Mr. Washington. Officer Hall identified Mr. Washington as a person involved in the drug transaction. In addition, Officer Hall put the cigarette he used into a vial, took the vial to the police station, put it into "a heat seal" (PD 95) or evidence bag, and completed forms PD 81 and DEA 7. He sent the package to the Drug Enforcement Administration for testing.

---

[3]  Officer Isaac Jackson also was a member of the arrest team. He stopped and arrested the man who had on a Miami Dolphins jersey, and recovered a vial containing liquid that had the smell of PCP. He also seized a $20.00 pre-recorded bill, and a pack of cigarettes.

During the drug transaction, Officer Brooks kept his eyes on Officer Hall and followed him to the gas station. Officer Brooks gave testimony concerning Officer Hall's contact with Mr. Washington and the man in the Miami Dolphins jersey. Officer Brooks also remained in communication with another undercover officer, Officer Wallace, who advised that he observed the transaction. Officer Wallace described it as "good" and indicated that the team should "[m]ove in on both individuals."

Detective George Thomas, a twenty-five year MPD veteran, testified as a narcotics expert, especially regarding "the sale and distribution of narcotics, police procedures for safeguarding evidence, and also the packaging and price of narcotics in the District of Columbia." He confirmed that the term "water" is "associated" with the sale of PCP. He explained the "dipper" process, and the process for securing seized narcotics, including the use of the heat seal envelope. Detective Thomas also identified the players in a street drug transaction — the buyer, the drug dealer, the "runner" or "juggler," or the "go between," who is similar to a runner or juggler. The runner, juggler, and go between work closely with the dealer and buyer.

Jonathan Liu, a DEA forensic chemist, tested the recovered cigarette and its contents. When he received government Exhibit 1, there was a whole cigarette in a plastic tube. Mr. Liu found that the cigarette (without the filter which was not tested) contained 0.1 gram of PCP. In addition, Mr. Liu analyzed government Exhibit 2, a bottle with a red cap that contained a glass vial with a small amount of brown liquid. The liquid contained PCP. Mr. Liu testified that 0.34 grams of the liquid remained after his analysis.

Mr. Washington did not testify. However, defense counsel and the government agreed on two stipulations that were presented to the jury. The first stated that Mr. Washington had been shot in the head in 2010, and as a result, he lost one eye and was "almost completely blind in his other eye." The second stipulation pertained to Mr. Washington's bank account; his bank statement for August 2012 was attached. The bank record showed that Mr. Washington had deposited $250 on August 3, and had withdrawn $200.00 from his account.[4]

---

[4] The stipulation and defense counsel's closing argument were designed to explain why Mr. Washington had $170.00 on his person when he was apprehended.

Because the prosecutor and defense counsel never agreed on a stipulation concerning Mr. Washington's commission of the charged crimes while he was on release status, the government presented the testimony of John Coates, a Pretrial Services Officer. Mr. Coates stated that Mr. Washington "was under supervision" during August 2012, in connection with a case initiated in early June 2012; he had been released to the pretrial service agency.

## ANALYSIS

We consider only two of Mr. Washington's arguments on appeal.[5]

**Offenses Committed During Release**

### *Arguments of the Parties*

---

[5] We do not consider Mr. Washington's ineffective assistance of counsel argument in this direct appeal. We reiterate that an "ineffectiveness claim is no different from any of the myriad claims that may be raised on direct appeal, except that it, far more probable than others, will require amplification through evidence not present, and findings not possible, within the four corners of the trial record." *Williams v. United States*, 783 A.2d 598, 602 (D.C. 2001) (en banc). For this reason, we have urged appellants to file a motion under D.C. Code § 23-110 (2012 Repl.) during the pendency of the direct appeal because "'that motion can furnish appellant a means of making a record regarding matters relevant to the ineffectiveness claim that do not appear in the record of the case on direct appeal.'" *Id*. (quoting *Shepherd v. United States*, 533 A.2d 1278, 1280 (D.C. 1987)).

Relying on *Eady v. United States*, 44 A.3d 257 (D.C. 2012), Mr. Washington first argues that his "right to be presumed innocent was substantially undermined." He asserts that the trial court plainly erred because "[t]he jury heard no less than seven times that [he] was on release in another criminal matter at the time of the charged offenses," including during preliminary, limiting, and final instructions and the prosecutor's closing argument. He claims that the government's "evidence was far from overwhelming," and that as in *Eady*, "'there is a 'reasonable probability' that the improper evidence and references to [another crime] might have influenced the jury to find that [he, Mr. Washington,] was guilty' of the drug charges in this case."

Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government contends that "absent both a stipulation and a waiver of [Mr. Washington's] right to a jury trial, [his] pre-trial release status was a fact that the jury was required to determine before the trial court could sentence him under the release-offender statute." Thus, the government asserts, "in the absence of a jury determination that [Mr. Washington] had been on pre-trial release at the time he committed the offenses, [he] could not have been sentenced under the release-offender statute." The government further maintains that, "[a]lthough the Supreme Court has

'recognized a [narrow] exception to [*Apprendi's*] general rule for the fact of a prior conviction,' [citing *Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013)], neither *Apprendi* nor its progeny have recognized an equivalent exception for the fact of a defendant's pre-trial release." In addition, the government argues that Mr. Washington has not established that the trial court committed plain error by admitting evidence of Mr. Washington's pre-release status.

In reply, Mr. Washington emphasizes his willingness to stipulate to his release status at the time the charged crimes were committed. He contends that "regardless whether 'on release' is a fact to be decided by a jury beyond a reasonable doubt, here as in *Eady*, there is evidence that [he] was willing to admit that fact and remove it from the jury's consideration." He claims that the question before this court is "whether the trial court erred in admitting evidence that the defense was willing to stipulate and the trial court knew or should have known was prejudicial." Mr. Washington also maintains that he has satisfied the plain error standard.

### *The Factual Context*

On November 13, 2013, the trial judge who was then assigned to this case reviewed the charges with counsel prior to the jury *voir dire*. The judge "assume[d]" that the "offenses committed while on release" charge would not "come before the jury." The judge further stated, "[w]e're going to take a stipulation to that after -- I won't be presenting that to the jury." Subsequently, the case was certified to another judge.

On November 18, 2013, the newly designated trial judge focused on the charge of offenses committed during release, recognized that charge as "an enhancement," and inquired whether "the stipulation that [the parties] reached eliminate[d] the jury being told about that or not." Defense counsel replied that the parties "were going to stipulate [Mr. Washington] was on release in [another] case." The parties agreed that in case of a stipulation, "these charges would not go before the jury." The prosecutor informed the judge that she would need to check with her appellate division.

When the trial judge responded that he "normally tell[s] the jury what the charges are at the beginning of [voir] [d]ire," defense counsel asserted "I think you should tell them what the offense is." The prosecutor replied, "[o]kay," and defense counsel said, "we'll just go forward without the stipulation at this point."

Later, during preliminary jury instructions, the trial court not only told the jury that one of the charges against Mr. Washington was "offenses committed during release," but also set forth the elements of that charge that the government must prove, "[o]ne, that [Mr. Washington] had been released by a Judicial Officer in a case pending in the Superior Court of the District of Columbia and, two, that while on release in the pending case he committed the offense of distribution of a controlled substance, possession with intent to distribute a controlled substance or possession of liquid PCP." At the conclusion of the preliminary instructions, defense counsel asked for a copy of the instructions but raised no objection to them.

The matter of the stipulation was not broached again until just prior to the testimony of Mr. Coates. The prosecutor announced that although Mr. Washington "had indicated that he would stipulate to the fact that he was on release . . .[,] [she] found out yesterday that the situation [sic] wasn't possible." The prosecutor also indicated that she should inform the jury of Mr. Coates's name before he was called to testify. Defense counsel declared that if the jurors "do somehow know [Mr. Coates], I don't think it would show any prejudice to my client, so I think we can just proceed." Defense counsel requested a limiting instruction, and the trial court gave the limiting instruction following Mr. Coates's brief testimony that Mr.

Washington "was under supervision" during August of 2012, including August 3, 2012. The limiting instruction emphasized that the government "must prove . . . that [Mr. Washington] was on release at the time the [charged] offenses were allegedly committed," and that Mr. Coates's testimony "is just for that point. It may not be considered by you for any other issue."

During the discussion of final jury instructions, the trial court revealed to counsel that it would again give the limiting instruction and would place it just before the identification instruction, near the enhancement charge. Consequently, after the trial court informed the jury about the elements of the charge of offenses committed during release, it repeated the limiting instruction, and then gave the identification instruction.

***Applicable Statutory Provision***

D.C. Code § 23-1328 (a)(1) provides in pertinent part:

> Any person convicted of an offense committed while released . . . shall be subject to . . . [a] term of imprisonment of not less than one year and not more than five years if convicted of committing a felony while so released . . . . (c) [a]ny term of imprisonment imposed

> pursuant to this section shall be consecutive to any other sentence of imprisonment.

This court has construed § 23-1328 as "a sentencing matter" because the "statute pertains only to the question of punishment rather than creating a new substantive offense." *Tansimore v. United States*, 355 A.2d 799, 803 (D.C. 1976).

### *Standard of Review and Applicable Legal Principles*

Because Mr. Washington acquiesced in, and did not object to, the trial court's decision to permit the prosecutor to prove, through government witness Coates, that Mr. Washington was on pre-trial release for another crime when he committed the charged offenses, we review his first appellate contention under the plain error standard. That is, in order for this court to reverse his conviction, Mr. Washington must demonstrate that (1) the trial court committed error; (2) the error was plain or obvious; (3) the error seriously affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Eady*, *supra*, 44 A.3d at 265 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

"[E]very defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Blakely v. Washington*, 542 U.S. 296, 313 (2004). This right flows from the Constitution's Sixth Amendment which "by its terms is not a limitation on judicial power, but a reservation of jury power." *Id.* at 308. Hence, "[t]he Sixth Amendment reserves to juries the determination of any fact, other than the fact of a prior conviction, that increases a criminal defendant's maximum potential sentence." *Southern Union Co. v. United States*, 132 S. Ct. 2344, 2348 (2012) (citing *Apprendi*, *supra*, 530 U.S. 466; *Blakely*, *supra*, 542 U.S. 296). Although "[a]n indictment must set forth each element of the crime it charges[,] . . . it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998).

Here, Mr. Washington contends that our holding in *Eady* requires reversal of his conviction. We summarized *Eady's* holding in *Magruder v. United States*, 62 A.3d 720, 722 (D.C. 2013), a case in which the trial judge applied "*Apprendi's* special treatment of prior convictions" and found, at sentencing, that appellant had a prior conviction and was subject to an enhancement:

> In *Eady*, *supra*, we applied the *Apprendi* exception to hold that the trial court had erred prejudicially in concluding that *Apprendi* required him to submit to the

jury the issue of whether the defendant had a prior felony or firearms conviction under D.C. Code § 22-4504 (a)(2) (2001), which allows enhanced punishment of a defendant with that conviction who commits the offense of carrying a pistol without a license.

*Eady* did not require reversal of the conviction in *Magruder* because the fact of defendant's prior conviction fell under the *Apprendi* exception. The defendant in that case "conceded at trial that he had previously been convicted of [possession with intent to distribute]." *Id*. at 722 n.1. Consequently, the judicial factfinding at sentencing did not contravene the Sixth Amendment because, "[e]ven a defendant who stands trial may consent to judicial factfinding as to sentencing enhancements, which may well be in his interest if relevant evidence would prejudice him at trial." *Blakely*, *supra*, 542 U.S. at 310.

Mr. Washington's case differs from *Magruder* and *Eady*. It differs from *Magruder* because, here, the essential factor that had to be proved before imposition of the sentencing enhancement was pre-trial release on another offense at the time the charged offenses were committed. It differs also from *Eady* because, there, both defense counsel and the prosecutor "agreed to stipulate that [the defendant] was on release for another criminal case at the time of the charged … offense." *Eady*, *supra*, 44 A.3d at 262. We declared that because of the stipulation, "the [c]onstitutional bases for *Apprendi* . . . were not implicated in [the

defendant's] trial," and thus, it was "unnecessary to advise the jury of a prejudicial fact that played no part in the jury's consideration of the charged crimes, and [the stipulation] was relevant only to sentencing." *Id.* at 262-63. In this case, however, Mr. Washington never conceded or stipulated that he was on pre-trial release when he committed the charged offenses.

The record shows that the matter of a stipulation was discussed between the trial judge and the parties before the *voir dire* process. At that time, defense counsel stated that the trial court "should tell [potential jurors] what the offense is," and defense counsel also declared, "[w]e'll just go forward without the stipulation at this point." When the prosecutor informed the trial court before calling Mr. Coates as a witness that the stipulation was not possible, defense counsel raised no objection and took the position that the trial could proceed. However, defense counsel requested a limiting instruction, which the trial court gave at the conclusion of Mr. Coates's limited testimony.

Without a stipulation, or without Mr. Washington conceding that he was on pre-trial release for another crime, the trial court undoubtedly contemplated the *Apprendi* exception — "other than a prior conviction" — and decided to read the exception narrowly. Consequently, the court determined that the government had

to establish the fact of Mr. Washington's pre-trial release. Whether Mr. Washington's release status is constitutionally distinct from his prior criminal history, thus requiring a jury finding regarding his release status, is not obvious under existing case law, and we need not decide that issue in this case because it is governed by the plain error standard of review. The trial court sought to diminish any prejudice to Mr. Washington by making sure that Mr. Coates's testimony focused on the fact of the pre-trial release, and by giving the jury limiting and final instructions that Mr. Coates's testimony could not serve as proof of the charged crimes.

In sum, we hold that the trial court did not commit error by allowing evidence of Mr. Washington's pre-trial release at the time he committed the charged offenses. Moreover, even assuming error that was plain or obvious and that seriously affected Mr. Washington's rights, on this record we would not hold that reversal of the trial court's judgment is justified because "'a miscarriage of justice would otherwise result.'" *Davis v. United States*, 984 A.2d 1255, 1259 (D.C. 2009) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)). Given the compelling evidence of Mr. Washington's guilt based on the government's proof, and Mr. Washington's opportunity to address the government's decision not to stipulate to his pre-trial release, we conclude that no

miscarriage of justice would result, even assuming plain error that seriously affected Mr. Washington's rights.

**Merger**

Second, Mr. Washington contends that certain of his convictions merge. Specifically, he asserts that his "conviction for possession must merge with his conviction for [possession with intent to distribute]." The government states that it does not object to a remand for the purpose of vacating the possession of liquid PCP conviction. On the facts of this case, we hold that Mr. Washington's conviction on the charge of possession of liquid PCP merges with that of possession with intent to distribute PCP. Consequently, we remand the case to the trial court with instructions to vacate the possession of liquid PCP conviction and to resentence Mr. Washington on the remaining counts.

Mr. Washington also argues that his convictions for distribution of PCP and possession with intent to distribute PCP must merge. The government claims that the convictions do not merge. The government maintains that Mr. Washington "aided and abetted the principal's possession of the remaining vial of PCP, and a jury could reasonably infer that [Mr. Washington] intended to assist the principal

in further distributions of that PCP." Mr. Washington replies that the evidence shows that he gave "the entire 'stash'" to the man in the Miami Dolphins jersey and had no further contact with him after the sale. Hence, he asserts, there was no evidence that Mr. Washington "'knowingly associated himself with intended future sales.'"

On this record we believe that the issue as to the merger of the convictions for distribution of PCP and possession with intent to distribute PCP is a close call. "The Double Jeopardy Clause requires that duplicative convictions for the same offense be vacated (or 'merged') so as to leave only one conviction and sentence remaining for that offense." *Brown v. United States*, 795 A.2d 56, 63 (D.C. 2002). We have previously held that, "[w]hen a seller sells his whole cache of drugs to another, possession with intent to distribute is a lesser included offense of distribution." *Smith v. United States*, 549 A.2d 1119, 1121 (D.C. 1988). We have also said that "one may be convicted on a theory of aiding and abetting if one knowingly associates oneself with a criminal venture and engages in conduct in furtherance of the offense." *Owens v. United States*, 688 A.2d 399, 403 (D.C. 1996). Moreover, "a runner [or a go between] aids and abets the offense of distribution when [he] directs a potential buyer to the holder." *Bullock v. United*

*States*, 709 A.2d 87, 94 (D.C. 1998) (citing *Lowman v. United States*, 632 A.2d 88, 90-92 (D.C. 1993)).

Here, Mr. Washington informed Officer Hall and Patrick that he had PCP. He made a phone call and indicated that he needed "one." When the man in the Miami Dolphins jersey arrived, Mr. Washington said, "[h]ere's my man here." The man removed a brown bag from Mr. Washington's pocket. The man and Officer Hall proceeded to the rear of a gas station where the man pulled out a vial with liquid, dipped the cigarette that Patrick had given him into the liquid, and instructed Officer Hall on how to pull the fluid into the cigarette. Later, when the man was apprehended, Officer Duvall recovered from him the vial of liquid. Mr. Liu tested both the cigarette and the vial of liquid. Both contained PCP, and after testing, 0.34 grams of the liquid remained. On these facts, reasonable jurors could conclude, through reasonable inferences, that Mr. Washington distributed PCP, and not only knowingly associated himself with the man in the Miami Dolphins jersey and a criminal venture but also engaged in conduct in furtherance of the offense of possession of PCP with intent to distribute it. *Owens*, *supra*, 688 A.2d at 403; *Bullock*, 709 A.2d at 94.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court, in part, and we remand this case to the trial court with instructions (a) to vacate Mr. Washington's possession of liquid PCP conviction as well as his conviction on the incorrectly indicted charge of offenses committed during release, and (b) to resentence him.

*So ordered.*