Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 17, 2008        Decided January 16, 2009

No. 05-3182

UNITED STATES OF AMERICA,
APPELLEE

v.

CHAUNCEY L. COLEMAN,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00349-01)

---

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant.  With her on the briefs was *A. J. Kramer*, Federal Public Defender.  *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III* and *Mary B. McCord*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, and GINSBURG and ROGERS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Chauncey L. Coleman was convicted by a jury of possession of a firearm by a prior felon, in violation of 18 U.S.C. § 922(g)(1). On appeal he assigns a variety of errors to the district court in contending that he was denied a fair trial. Of the two voir dire challenges, we need address only one. Because the district court read the unredacted indictment to the prospective juror pool, revealing appellant's prior felony convictions for crimes of violence including robbery with a deadly weapon, we reverse and remand for a new trial. Appellant had offered to stipulate to his prior felon status, and although defense counsel did not object, the issue was not waived and the error was plain and not harmless.

**I.**

On the hot afternoon of July 10, 2004, Officer James Boteler, a member of the Metropolitan Police Department for four years, and Officer James Harris, a rookie in training, entered a residential building in response to citizen complaints about narcotics activity in vacant apartments. The officers were in uniform. Boteler signaled to a woman on the front steps whom he knew to be a drug user to remain quiet and proceeded to the second floor where he heard voices. From the second floor landing he looked through the open door of apartment 202 and saw five people: three in the living room; a woman standing near a pass-through from the living room to the kitchen, who appeared to be manipulating a crack pipe in her hands; and appellant, who was standing in the kitchen facing Boteler and holding to his mouth a clear glass smoking device with an orange tip.

After ten to fifteen seconds, Officer Boteler, upon hearing Officer Harris's noisy footsteps behind him, stepped into the apartment and announced "police." The three people in the living room stood still. Appellant looked startled and stepped back from the countertop. According to Boteler, appellant "grabbed, and, almost in a swatting motion, knocked . . . a silver-colored handgun revolver with black grips from his waistband," out of the officer's view. The gun made a "thud" noise when it hit the floor. Boteler ordered appellant to put his hands up and come out of the kitchen into the living room. Appellant did so after putting his crack pipe on the counter. Boteler claimed appellant was "sweating profusely" and looked "very distressed." Upon handcuffing appellant, Boteler told Officer Harris to secure the others by having them put their hands against the wall. At this point, Boteler mentioned a "gun," walked into the kitchen, and found a handgun less than a foot from where appellant had been standing. Boteler called the dispatcher for a crime scene technician.

On cross-examination, Officer Boteler denied that his prior sworn statements regarding the gun were contradictory. He had variously testified on previous occasions that Coleman "threw," "grabbed," and "dropped" the gun. On cross-examination Boteler testified that appellant had "dropped [the gun], grabbed it, and knocked it out of his pants," "almost in that order." Two other police officers also testified, a forensic scientist who processed the gun and a fingerprint specialist who testified that no identifiable prints were found on it. At the close of the government's case, the prosecutor read to the jury the three stipulations agreed to by the parties: (1) appellant had previously been convicted of a crime punishable by a term of more than one year in prison; (2) the .357 magnum revolver and ammunition were, respectively, a firearm and ammunition for purposes of section 922(g); and (3) the gun and ammunition were manufactured outside the District of Columbia and traveled

through interstate commerce.

In defense, appellant called Officers Boteler and Harris and testified himself. Boteler admitted that in his initial call to the dispatcher he had not informed the dispatcher of the gun but claimed that at the time he did not need help with the gun because it was secured. Harris admitted that he did not see a gun on appellant and learned there was a gun only after appellant was handcuffed, when Boteler mentioned a "gun." Harris testified that he only saw the gun on the kitchen floor and the crack pipe on the countertop.

Appellant denied the gun was his. He testified that he was in the apartment smoking crack along with four other people and was holding up his crack pipe when the officers entered the apartment. According to appellant, the woman had just given him some crack, he had put it in his pipe, which he was holding in his right hand, and was raising his lighter to his pipe with his left hand. Jumping back upon seeing Officer Boteler, appellant put the lighter on the counter and came from behind the counter holding the crack pipe. Boteler told him to drop what was in his hand, and he dropped the pipe on the floor. Boteler then stepped on the pipe and handcuffed appellant. At that point Boteler told Officer Harris that appellant was being locked up for possession of cocaine and drug paraphernalia, and Harris called the dispatcher. Boteler then walked into the kitchen, looked around, and came out and asked the woman if she had any more cocaine. Boteler returned to the kitchen and a few seconds later bent down and came up with a gun. When Boteler asked appellant if this was his gun, appellant told him: "Man, that ain't my gun. I ain't have no gun." Boteler then told Harris "gun." Appellant also denied having anything in his waistband.

On cross-examination, appellant admitted to prior convictions for unauthorized use of a vehicle and destruction of

property, escape, breaking and entering, and possession of stolen property.  The district court gave a cautionary instruction that this evidence was relevant only to appellant's credibility and not to show that he has a propensity to commit crime.  After defense counsel's redirect examination, the district court, over defense objection, asked appellant how long he had been using crack, and appellant answered: "About ten years."

In final instructions, the district court offered no further instruction on the use of prior crimes evidence.   At the prosecutor's request, "as a matter of caution," the version of the indictment sent into the jury room was redacted.  The jury found appellant guilty of gun possession as a prior felon, and the district court sentenced him to 120 months' imprisonment and three years' supervised release, and ordered him to pay a special assessment of $100.

**II.**

"The Sixth Amendment right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." *United States v. Edmund*, 52 F.3d 1080, 1094 (D.C. Cir. 1995) (internal citations and quotation marks omitted).   In *Gomez v. United States*, 490 U.S. 858 (1989), the Supreme Court identified voir dire as "a critical stage of the criminal proceeding" because "[j]ury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendant's culpability."  *Id.* at 873 (internal citations omitted); *see also Rosales-Lopez v. United States,* 451 U.S. 182, 188 (1981); FED. R. CRIM. P. 24(a). Appellant contends that he was denied a fair trial in violation of the Sixth Amendment for several reasons, including that the district court plainly erred during voir dire first, by reading the unredacted indictment to the jury when he had offered to

stipulate his felon status and second, by failing to inquire as requested whether jurors held possible biases with respect to police testimony and cases involving guns, and that these errors were not harmless. Because the reading of the unredacted indictment to the prospective jurors was reversible error, we need not decide whether the failure to pose the requested questions about police testimony and gun bias was also reversible error.

Prior to the voir dire questioning of a pool of potential jurors, the prosecutor advised the district court that the parties had agreed to three stipulations, which the prosecutor read to the jury at the close of the government's case: that appellant had previously been convicted of a felony and that the gun and ammunition both qualified as prohibited under section 922(g). The parties also submitted agreed-to proposed voir dire instructions and questions as well as proposed jury instructions. The district court acknowledged the prosecutor's statement about the stipulations and proceeded to discuss only the one instruction, on probable cause, on which the parties were not in agreement. The parties then discussed with the district court the extent to which the jury would learn of appellant's criminal history, and the district court ruled that the prosecutor would not be allowed to refer to either of appellant's prior convictions as a felony. Earlier appellant had filed an opposition to the government's in-limine motion to admit evidence of his prior conviction for armed robbery pursuant to Federal Rule of Evidence 404(b); the district court had denied the motion without prejudice to its renewal at trial on rebuttal.

A jury pool was subsequently brought into the courtroom, sworn, and given preliminary instructions by the district court, including the instruction to listen to everything the district court judge said because alternate jurors might be needed at trial. The district court told the prospective jurors that the case involved a

one-count indictment, explaining that an indictment was not evidence, that the evidence would decide the case, and that it was for the jury to determine whether the government had sustained its burden of proof. The district court then read to the jury the unredacted indictment, which stated in pertinent part:

> On or about July 10, 2004, within the District of Columbia, Chauncey L. Coleman, having been convicted of crimes punishable by imprisonment for a term exceeding one year in Prince George's County, Maryland . . ., a *crime of violence*, that is, *robbery with a deadly weapon* and in D.C. Superior Court . . . a crime of violence, that is, escape, did unlawfully and knowingly receive and possess a *firearm*, that is, a Smith & Wesson .357 caliber revolver, and did unlawfully and knowingly receive and possess ammunition, that is, .357-caliber ammunition, which had been . . . transported in . . . interstate commerce.

(emphases added).

Although the district court judge, in conducting the voir dire and eliciting responses to a written jury questionnaire, spoke individually with some jurors when they volunteered information about a law enforcement connection or a gun incident and asked whether they could be fair and impartial, the district court did not put to the pool of prospective jurors two questions that the parties had jointly requested concerning police testimony and gun charges.[1]

---

[1] The two requested questions were:

> Do you believe that law enforcement agents or officers are, or are not, trustworthy as a general matter, and would any of you tend to give either more or less weight to, or tend to believe

8

Defense counsel did not object in the district court to the reading of the unredacted indictment. However, because appellant stipulated to his prior felon status and even objected to admission of Rule 404(b) evidence, appellant did not waive the challenge he now makes. Although the failure to object forfeits a claim, "[m]ere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b)." *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also United States v. Tann*, 532 F.3d 868, 872 (D.C. Cir. 2008). The government's suggestion that appellant invited the error by not objecting in the district court and so cannot raise it on appeal, citing *United States v. Sutton*, 801 F.2d 1346, 1367 (D.C. Cir. 1986), and Federal Rule of Criminal Procedure 51(b), is not well taken. The parties confirmed after their initial briefs were filed that joint proposed voir dire and jury instructions were emailed to the district court prior to trial, although never docketed. Further, nothing in the record indicates that defense counsel requested the voir dire error, as occurred in *Sutton*, *United States v. Yousef*, 327 F.3d 56, 119-20 (2d Cir. 2003), and *United States v. Larouche*, 896 F.2d 815, 829 (4th Cir. 1990), on which the government relies. In *Sutton*, counsel voiced agreement on three occasions with the district court's ruling, 801 F.2d at 1367, whereas here, appellant simply did not object. In *Yousef*, the defendants, whose requests for mid-trial voir dire had been granted on certain subjects,

---

or disbelieve, the testimony of a law enforcement agent or officer simply because of his or her status as a law enforcement agent or officer?

Do you have an opinion or feeling about the possession of firearms, or laws dealing with the possession of firearms, that would make it difficult to render a fair and impartial verdict based solely upon the evidence presented during the trial?

made a tactical decision not to request mid-trial voir dire on other subjects, 327 F.3d at 119. Likewise, in *Larouche*, a defense request failed to adequately probe the issue of juror bias against the defendants, 896 F.2d at 829, whereas here, the offer to stipulate was directed to that precise bias.

Although the challenge to the reading of the unredacted indictment is not waived, because appellant failed to object at trial he must show in order to prevail on appeal that there was "an error that is plain and that affect[s] substantial rights," *Olano*, 507 U.S. at 732 (internal quotation marks omitted) (alteration in original), by prejudicing the defense and "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings," *id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)) (internal quotation marks omitted). We conclude that appellant has met this burden.

In *United States v. Jones*, 67 F.3d 320 (D.C. Cir. 1995), this court addressed the attendant harm of informing the jury of the defendant's prior felony conviction in a prosecution for violation of section 922(g) where the prior conviction is essentially identical to the charges in the indictment. *Id.* at 324. Jones was indicted for drug offenses and being a felon in possession of a firearm. Prior to voir dire, defense counsel offered to stipulate to the fact of Jones' prior felony conviction and moved to exclude evidence of the prior conviction pursuant to Federal Rule of Evidence 403. *Id.* at 321. Nonetheless, after instructing the prosecutor not to refer to the nature of the prior felony, the district court read to the jury the unredacted indictment, which stated that Jones had previously been convicted of possession with intent to distribute cocaine, which was a felony. *Id.* When the prosecutor called a witness to describe the nature of the prior felony, the district court overruled the defense objection, stating that "the cat is probably out of the bag," and gave a limiting instruction then and during

the final instructions to the jury regarding other crimes evidence. *Id.*

On appeal, the government presciently conceded that it was error to read the unredacted indictment in light of the defense offer to stipulate felon status, *id.* at 322-23; *see Old Chief v. United States*, 519 U.S. 172, 191-92 (1997), but argued that the error was harmless, *Jones*, 67 F.3d at 322. This court held that the district court had abused its discretion by denying the defense motion to exclude evidence of the nature of the prior felony conviction and that it had plainly erred by informing the jury of the nature of the felony when reading the indictment and giving final jury instructions. *Id.* at 324-25. Applying to Federal Rule of Evidence 403 this court's rationale regarding severance motions, the court observed that "the danger of undue prejudice by allowing the government to introduce evidence regarding the nature of Jones' prior felony conviction was manifest in view of the virtually identical charges in the indictment." *Id.* at 324; *cf. United States v. Dockery*, 955 F.2d 50, 54 (D.C. Cir. 1992); *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985). Further, even though the government had no need to establish the nature of the prior felony to meet its burden of proof, *Jones*, 67 F.3d at 324 (citing *United States v. Tavares*, 21 F.3d 1, 3-4 (lst Cir. 1994) (en banc)), the jury was confronted on five separate occasions with both the fact and nature of Jones's prior felony conviction, *id.* The court concluded that the error was not harmless because once the jury learned of his prior offense, Jones' casual user defense was doomed. *Id*. at 325.

Confronted with the same issue in *United States v. Myles*, 96 F.3d 491 (D.C. Cir. 1996), where the prior-conviction information had been presented to the jury on four occasions, the court concluded that, in the absence of any defense objection, there was no plain error, *id.* at 496-97. The court

distinguished *Jones* on the ground that the defense had neither offered to stipulate nor requested that the prosecution refrain from revealing the nature of the prior conviction, *id*. at 496. The court further concluded that the error was not prejudicial in light of "the strong evidence" of drug distribution, *id.* at 497, namely a controlled buy in which Myles was the only man matching the undercover officer's description of the seller, a prerecorded twenty dollar bill found under the mattress where Myles was lying when the arrest team entered the bedroom, and the loaded gun found during a search of the apartment incident to Myles' arrest, *id.* at 493-94.

Under this court's precedents, then, where proof of the defendant's prior felon status is required, it is reversible error for the district court to read to the jury the unredacted indictment referring to the prior felony offense where the defense has offered to stipulate felon status and either a defense is compromised or the government's evidence of guilt is not "strong." *See Jones*, 67 F.3d at 324-25; *Myles*, 96 F.3d at 496-97. Here, appellant offered to stipulate his felon status. He also sought to exclude Rule 404(b) evidence of and references to his prior armed and violent convictions in the government's case-in-chief. Yet the prospective jurors were informed of appellant's prior offense involving gun possession from the reading of the unredacted indictment. As this court has acknowledged, manifest prejudice can result when the jury is informed of a prior conviction that is similar to the charged offense. See, e.g., Jones, 67 F.3d at 314. One of the prior offenses listed in the indictment, robbery with a deadly weapon, is substantially similar to the charged offense of felon in possession of a weapon. Moreover, the other government evidence was not strong. As both the district court and the prosecutor acknowledged during trial, the outcome of the case turned on whether the jury believed Officer Boteler or appellant. The district court's reading of the unredacted indictment incurably

compromised appellant's defense denying gun possession. Accordingly, the district court plainly erred in reading the unredacted indictment to the jury.

The government's attempt to distinguish *Jones* on the ground that appellant had not offered to stipulate his felon status until after the unredacted indictment was read to the jury is based on a misreading of the record. In its brief the government relies on a transcript reference when the prosecutor moved for admission of the stipulations, overlooking the transcript reference indicating that the district court was informed of the joint stipulations before a jury pool was brought into the courtroom. The government's reliance on *United States v. Moore*, 104 F.3d 377 (D.C. Cir. 1997), is misplaced; unlike appellant, the defendant in *Moore* sought no measures to minimize the prejudice from joinder of the section 922(g)(1) charge, *id.* at 382.

The voir dire error was not harmless because its effect was to bolster Officer Boteler's testimony and discredit appellant's where "police officer credibility lies at the heart of the case," *United States v. Littlejohn*, 489 F.3d 1335, 1346 (D.C. Cir. 2007). In closing argument, the prosecutor emphasized that "the only thing at issue . . . [was] where [the] gun came from, [and] whose gun was it," and that "this case is about credibility." Appellant challenged the officer's testimony on cross-examination, and in his own case underscored the degree to which the government's case turned on Boteler's credibility. As in *Jones*, appellant's defense denying gun possession was doomed by the reading of the unredacted indictment stating he had previously been convicted of armed robbery. Unlike the government's evidence in *Myles*, there was no independent corroborating evidence; Officer Harris saw neither a gun on appellant's person nor where Boteler had found the gun. Consequently, the government's evidence was not "strong,"

much less overwhelming.  *See United States v. Clay*, 346 F.3d 173, 177-78 (6th Cir. 2003); *United States v. Turner*, 565 F.2d 539, 541 (8th Cir. 1977).

Accordingly, we reverse the conviction and remand for a new trial.  We need not reach appellant's other claims of error. For example, any error arising from the district court's questioning of appellant about his crack cocaine habit is unlikely to recur at retrial.  However, in light of our remand, we caution that appellant's second claim of voir dire error is not without force.  In *Brown v. United States*, 338 F.2d 543 (D.C. Cir. 1964), the court held that the failure to inquire into prospective jurors' possible biases regarding police testimony was reversible error, *id.* at 545 (citing *Sellers v. United States*, 271 F.2d 475, 476-77 (D.C. Cir. 1959)), where "virtually the entire case for the prosecution" consisted of the testimony of two military police officers.  Although the district court retains "ample discretion" in conducting voir dire, *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981), and does not necessarily have to ask all of the questions that the parties request, *see United States v. West*, 458 F.3d 1, 6 (D.C. Cir. 2006), this discretion is "subject to the essential demands of fairness," *Aldridge v. United States*, 283 U.S. 308, 310 (1931).  There is every reason to view the two requested voir dire questions, *supra* note 1, as important in order to "probe a potential juror's views of the credibility of certain kinds of witnesses," *West*, 458 F.3d at 8, as well as bias regarding the charge against appellant.  *See Littlejohn*, 489 F.3d at 1343; *United States v. Boney*, 68 F.3d 497, 502 (D.C. Cir. 1995); *United States v. Liddy*, 509 F.2d 428, 435 (D.C. Cir. 1974); *cf. Gray v. Mississippi*, 481 U.S. 648, 665 (1987).  As in *Brown*, "[r]esponses to the requested query might have supplied defense counsel, or indeed the prosecutor, with relevant and useful information for exercising peremptory challenges or challenges for cause," 338 F.2d at 545; *see also Littlejohn*, 489 F.3d at 1343-44.  The significance of the inquiries is highlighted

by the fact that officer credibility was the key issue, *see United States v. Aragnos*, 853 F.2d 1, 5 (1st Cir. 1988); *Sellers v. United States*, 271 F.2d 475, 476-77 (D.C. Cir. 1979), and appellant was charged with a gun offense, *see*, *e.g.*, *United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980).

Finally, a remand is not required on appellant's claim of ineffective assistance of trial counsel for failing to call the woman in the apartment as a witness and to preserve errors for appeal. That defense counsel was "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland v. Washington*, 466 U.S. 668, 687 (1984), is demonstrated by the fact that he hired an investigator and presented stipulations as well as proposed voir dire questions and instructions in addition to opposing the government's in-limine motion to introduce Rule 404(b) evidence in its case-in-chief.