**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3755
_____

UNITED STATES OF AMERICA

v.

THOMAS SHANNON, a/k/a CUZZO

Thomas J. Shannon,
                                Appellant


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.N.J. No. 3-15-cr-00275-001)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 26, 2017
_____

Before: GREENAWAY, JR., COWEN, *Circuit Judges*, and PADOVA, *District Judge*.[*]

(Opinion Filed: November 1, 2017)
_____

OPINION[**]
_____

_____

[*] The Honorable John R. Padova, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Thomas Shannon appeals from the conviction and sentence entered by the United States District Court for the District of New Jersey. Shannon raises five claims. First, he argues that his right to a fair trial under the Sixth Amendment to the Constitution of the United States was violated when the District Court read a bifurcated count of the Indictment to the jury. Second, he challenges his conviction on the possession of a firearm in furtherance of a drug trafficking count. Third, he contends that case agent testimony at trial regarding interpretation of certain intercepted calls and voice identification should have been excluded. Fourth, Shannon asserts that he was erroneously considered a career offender for the purposes of sentencing. Fifth, he challenges the application of a sentencing enhancement for being an organizer or leader. None of these claims is meritorious. We will affirm.

## I. Background

According to the Government, between 2013 and 2014, Shannon participated in a drug trafficking conspiracy that stretched from California to New Jersey. On multiple occasions, Shannon ordered heroin and cocaine from California-based suppliers and then transferred the narcotics to a drug trafficking organization in New Jersey. The Federal Bureau of Investigation intercepted a drug shipment from California headed for a stash house in Long Branch, New Jersey on March 20, 2014. Agents conducted a controlled delivery, with one law enforcement agent posing as a mail carrier who personally delivered

2

the drug package to Shannon at the Long Branch stash house. When Shannon approached the postal truck, law enforcement agents arrested him and seized both the drug package and his cell phone.

On the same date, agents executed search warrants at locations including stash houses in Asbury Park and Long Branch and Shannon's Jersey City residence. At the Asbury Park stash house—where visual surveillance had previously placed Shannon—law enforcement recovered two semi-automatic firearms (one of which had a magazine with eight rounds) inside a black box stored inside a closet in the bedroom; 898.5 grams of heroin, 555.4 grams of cocaine, and 24.1 grams of cocaine base stored in the black box; more than 18,000 individual doses of heroin in plastic bags on a shelf in the same closet; various drug-related paraphernalia; correspondence addressed to Shannon inside a cardboard box on the top shelf of the same closet; an invoice addressed to Shannon on the bedroom floor; sheets of paper with Shannon's name in the living room; and utility bills, rent receipts, and a 2012 lease for the premises, all in Shannon's name. Additional drug paraphernalia was recovered at the Long Branch stash house.

In the master bedroom of Shannon's Jersey City residence, meanwhile, agents found a loaded revolver and a box of ammunition in a nightstand by the bed; a second box of ammunition above the ceiling tile above the bed; $117,000 in cash in safes under the bed and in a dresser drawer; $50,000 of deposit slips reflecting cash deposits; and two car titles and a registration document in Shannon's name.

A grand jury returned a five-count indictment charging Shannon with conspiracy to

3

distribute and to possess with intent to distribute cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. § 846; possession with intent to distribute 100 grams or more of heroin and 500 grams or more of cocaine, in violation of 21 U.S.C § 841(a)(1); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and money laundering, in violation of 18 U.S.C. § 1957. The District Court bifurcated the § 922(g) charge, which would be presented to the jury following its verdict as to the other counts.

In its preliminary instructions to the jury, the District Court read all five counts of the Indictment, including Count Three: "unlawful possession of a firearm after having been convicted of a felony offense, in violation of Title 18 U.S.C., Section 922(g)(1)." A 107-108. Defense counsel objected at the conclusion of the instructions. At a sidebar, defense counsel asked that a new jury be selected to correct the error, while the Government contended that a corrective remedy would only draw attention to the bifurcated count. The District Court concluded the sidebar and told the jury that the instructions had been misread. It then repeated its recitation of the Indictment, this time omitting the § 922(g) charge and instructing the jury to "please consider this as the appropriate charge." A 112-114. The District Court also instructed the jury that an indictment is "an accusation only" and "not evidence of anything." A 114. No other references were made to the bifurcated count for the remainder of the trial, including in the reading of the final jury instructions.

During trial, the jury heard evidence of phone calls and text messages that were

4

intercepted pursuant to a court-sanctioned wiretap. Special Agent Charles Malos, the case agent who testified as a government witness, identified the participants on the intercepted phone calls and interpreted language used in both the calls and text messages. Specifically, based on his experience listening in on the intercepted phone calls and reviewing text messages over a period of months, Special Agent Malos testified that: (1) "math" referred to "a quantity of either drugs or money"; (2) "Christine," "white girl," and "bitch" referred to cocaine; (3) "Street" and "Chinatown" referred to heroin; (4) "she's coming today" meant that a package of narcotics would be arriving; and (5) "touchdown" meant that a package of narcotics had been delivered. In addition, he identified the voice of Shannon on several calls.

The jury also heard testimony from the following Government witnesses: co-conspirator Marlon Ramos, agents who executed the search warrants, a firearms expert, a forensic chemist, and a forensic accountant.

On May 25, 2016, the federal jury convicted Shannon of the four non-bifurcated counts. Sentencing was held on September 19, 2016. At the hearing, defense counsel objected to the application of the organizer or leader enhancement under section 3B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), arguing that Shannon was instead "at the bottom or second [to] last rung of the conspiratorial ladder." A 16. The District Court disagreed, finding that the evidence at trial established that Shannon maintained stash houses, directed the transportation of drugs from California to New Jersey, participated in making cash deposits into various accounts, and maintained

5

numerous cell phone communications with co-conspirators. With respect to the criminal history category calculation, defense counsel asserted that the District Court's calculation overstated Shannon's record. Counsel emphasized that several offenses occurred more than 15 years from the date of the instant arrest and that Shannon was "substantially offense-free until the time of this incident." A 29. The District Court, however, denied the motion for a departure in light of the time period of prior incarceration and record that reflected an "ongoing issue with regard to drug trafficking, and possession or use of handguns." A 34.

The District Court determined Shannon's total offense level to be 37 and criminal history category to be VI. The District Court also found that Shannon was a career offender under U.S.S.G. § 4B1.1(b). The advisory guidelines range was therefore 420 months to life. The District Court granted a downward variance based upon his family relationships, citizenship, and age and imposed a sentence of 300 months in prison to be followed by five years of supervised release.

## II. Jurisdiction

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III. Analysis

### 1. Fair Trial Claim

Shannon claims that he was denied a fair trial in violation of the Sixth Amendment because he was irreparably prejudiced when the District Court read the bifurcated § 922(g)

6

count to the jury as part of the preliminary instructions. "We exercise plenary review to determine whether jury instructions misstated the applicable law, but in the absence of a misstatement we review for abuse of discretion." *United States v. Moreno*, 727 F.3d 255, 261–62 (3d Cir. 2013) (quoting *United States v. Hoffecker*, 530 F.3d 137, 173–74 (3d Cir. 2008)).

In making his Sixth Amendment argument, Shannon cites to *United States v. Coleman*, 552 F.3d 853 (D.C. Cir. 2009). In that decision, the United States Court of Appeals for the District of Columbia held that the lower court's reading of a one-count unredacted indictment to the juror pool that stated that the defendant had been convicted of "a crime of violence, that is, robbery with a deadly weapon" and "a crime of violence, that is, escape" was plain error. *Id.* at 857, 859–60 (emphases omitted). The court explained that, under circuit precedent:

> where proof of the defendant's prior felon status is required, it is reversible error for the district court to read to the jury the unredacted indictment referring to the prior felony offense where the defense has offered to stipulate felon status and either a defense is compromised or the government's evidence of guilt is not "strong."

*Id.* at 859. Coleman had offered to stipulate his felon status, he had filed a Rule 404(b) motion to exclude evidence of and references to his prior convictions, the robbery with a deadly weapon offense listed in the indictment was substantially similar to the felon in possession charge at issue, and the government's other evidence was not strong. *Id.* at 859–60. Under these circumstances, the court concluded that the district court's reading of the unredacted indictment "incurably compromised appellant's defense denying gun

7

possession" and constituted plain error. *Id.* at 860.

Shannon's reliance on *Coleman* is misplaced. Significantly, the District Court here did not reveal the nature of Shannon's prior conviction, but simply stated in its initial reading that he was charged with "unlawful possession of a firearm after having been convicted of a felony offense." A 107. The District Court, moreover, remedied its misstatement following its initial recitation by explaining that it had "misread one section" and the corrected reading should be considered the appropriate charge. A 113. After rereading the Indictment—and omitting the bifurcated count, which was never presented to the jury—the District Court also stated that an indictment is merely an accusation and is not evidence.

This Court "generally presume[s] that juries follow instructions given by the District Court." *United States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003); *see also United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir. 1993) ("[W]e presume that the jury will follow a curative instruction unless there is an 'overwhelming probability' that the jury will be unable to follow it and a strong likelihood that the effect of the [incorrectly admitted] evidence would be 'devastating' to the defendant." (citations omitted) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)). The trial court's curative instruction followed the initial misreading in short order, and the § 922(g) charge was not mentioned again. Accordingly, we find no abuse of discretion. *Cf. United States v. Moreland*, 703 F.3d 976, 989 (7th Cir. 2012) (finding that the district court's reading of an unredacted indictment— which listed the appellant's felony convictions—after closing arguments was harmless

where "the judge [promptly] realized her mistake, collected the instructions, and gave the jurors new copies containing the redacted indictment," and there was "overwhelming" evidence against the defendant); *United States v. Dortch*, 696 F.3d 1104, 1110–11 (11th Cir. 2012) (concluding that submission of an unredacted indictment "that referenced several of [the appellant's] previously undisclosed felony convictions" was harmless where the district court instructed the jury that "that the indictment was not evidence of guilt" and evidence against the defendant was strong).

**2. Sufficiency of the Evidence Claim**

Shannon next argues that the evidence presented at trial was insufficient to convict him of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). In reviewing a sufficiency of the evidence claim, "[w]e 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[ ] beyond a reasonable doubt.'" *United States v. Caraballo–Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (second alteration in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). We "consider[] only the 'legal' question [of] 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

"Under this particularly deferential standard, we 'must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or

9

by substituting [our] judgment for that of the jury.'" *Caraballo–Rodriguez*, 726 F.3d at 430 (alterations in original) (quoting *Brodie*, 403 F.3d at 133). Moreover, "[w]e must sustain the jury's verdict 'if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision.'" *Id.* (quoting *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)). We "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

The elements of a § 924(c) offense are that: "(1) the defendant committed either the crime of conspiracy to distribute and possess with intent to distribute a controlled substance or the crime of possession with intent to distribute; (2) the defendant knowingly possessed a firearm; and (3) the defendant knowingly possessed the firearm in furtherance of the crime of conspiracy to distribute or in furtherance of the crime of possession with intent to distribute." *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006). Although Shannon challenges the sufficiency of the evidence as to the second and third elements, we agree with the Government that substantial evidence was presented at trial to establish that Shannon possessed a firearm and that possession was in furtherance of a drug trafficking crime.

Possession may be actual or constructive. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). Constructive possession, which may be proved by circumstantial evidence, "requires an individual to have the power and intent to exercise both dominion

10

and control over the object he or she is charged with possessing." *Id.* (quoting *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999)). The Government presented sufficient evidence at trial to demonstrate that Shannon exercised dominion and control over the Asbury Park stash house and Jersey City residence where the firearms were recovered. Initial visual surveillance had placed Shannon at the stash house. Then, pursuant to the execution of a search warrant at the Asbury Park location, law enforcement found correspondence addressed to Shannon in the same closet where the firearms were stored, an invoice addressed to Shannon on the floor of the same bedroom, sheets of paper with Shannon's name in the living room, and utility bills, rent payment receipts, and a lease for the premises in Shannon's name in a kitchen drawer.

In the Jersey City location, agents found two car titles and a registration document for vehicles titled in Shannon's name in the dresser of the master bedroom where the firearm was recovered. Following the search incident to Shannon's arrest, moreover, agents had found a photograph on Shannon's cell phone that appears to show him in the bathroom in the Jersey City residence.

Viewing the record in the light most favorable to the Government, we find that the evidence at trial was sufficient for a jury to conclude that Shannon exercised dominion and control over the Asbury Park stash house and Jersey City residence and that he possessed the three firearms recovered from the locations.

Shannon also asserts that there was insufficient evidence for the jury to find that he possessed a firearm "to advance or promote criminal activity." *Bobb*, 471 F.3d at 496. We

11

have held that the following nonexclusive factors are relevant to determining whether possession is in furtherance of a drug trafficking crime:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* (quoting *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004)). In this case, the two semi-automatic firearms found in the Asbury Park stash house—one of which had a magazine with eight rounds—were between "three to four inches to three feet" from nearly one kilogram of heroin, half a kilogram of cocaine, and 24 grams of cocaine base, in addition to plastic bags containing over 18,000 doses of heroin. SA 735; *see* SA 718-724, 729-730, 814-817. Even though one of the two locks on the black box was secured and the firearms were not chambered, our precedent does not require immediate accessibility for a § 924(c) conviction. *See United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). Nevertheless, Special Agent Ronald Duce testified based upon his personal observation that he could have accessed the firearms within seconds of accessing the other items. Scrutinizing the "totality of the evidence, both direct and circumstantial" and making "all available inferences in favor of the government," we find that the proximity of the firearms to the large quantities of narcotics supports the jury's conclusion that the guns were used in furtherance of drug trafficking activities. *Iglesias*, 535 F.3d at 157 (quoting *Sparrow*, 371 F.3d at 852). Similarly, there is sufficient evidence that Shannon possessed the loaded firearm found in the Jersey City bedroom in furtherance of criminal activity. Because it

12

was located near two boxes of ammunition and $117,000 in cash, a rational jury could infer that he kept the firearm in his nightstand to protect his drug proceeds. We therefore affirm Shannon's conviction for possession of a firearm in furtherance of a drug trafficking crime.

**3. Admission of Testimony Claim**

Shannon claims that the District Court improperly permitted lay opinion testimony from Special Agent Malos regarding the intercepted phone calls and text messages. We review the District Court's decision to admit lay opinion testimony for abuse of discretion. *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 80 (3d Cir. 2009). The admission of lay opinion testimony is governed by Federal Rule of Evidence 701, which permits such testimony as long as it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

First, Shannon argues that Special Agent Malos's interpretation of "touchdown," "she's coming today," and "math" were not helpful to the jury. While "interpretation of code words by a witness is permissible, the interpretation of *clear* statements is not permissible." *United States v. Dicker*, 853 F.2d 1103, 1109 (3d Cir. 1988) (footnote omitted). Here, the phrases Shannon identifies may have clear meanings in other contexts, but Special Agent Malos testified, based on his experience listening to an array of communications, that they had unique meanings as used by the participants of the drug trafficking conspiracy. As he explained at trial, he believed that the terms were being used

as code words "[b]ecause you would hear those words utilized within a conversation, and in the context of the conversation those words just did not make any sense if they were taken at their true meaning." SA 95. That "touchdown" meant that a package of narcotics had been delivered, "she's coming today" meant that a package of narcotics would be arriving, and "math" referred to a quantity of drugs or money would not have been readily apparent to jurors who had less familiarity with the conspiracy and less exposure to the months of communications that Special Agent Malos had monitored. Accordingly, the District Court here did not abuse its discretion when it determined that the agent's testimony as to certain expressions used by participants in wiretapped conversations and messages would be helpful to the jury. *See United States v. De Peri*, 778 F.2d 963, 977 (3d Cir. 1985) (finding no abuse of discretion in the admission of lay testimony where, "[t]o the uninitiated listener, [the participant] speaks as if he were using code").

Second, Shannon asserts that the District Court prejudiced his case by permitting Special Agent Malos's identification of Shannon's voice on intercepted phone calls. The agent's testimony, however, satisfies the Rule 701 standard: his identification was based on a combination of his listening to numerous calls and hearing Shannon's voice in person upon his arrest, it allowed the jury to determine who the participants in certain conversations were, and it did not require specialized knowledge. *See United States v. Cambindo Valencia*, 609 F.2d 603, 640 (2d Cir. 1979) (explaining that the "standard for the admissibility of an opinion as to the identity of a speaker on tape is merely that the identifier has heard the voice of the alleged speaker at any time" and "voice identification

14

is not generally considered to be an area where expertise is important"). The District Court did not commit error in admitting Special Agent Malos's testimony as to voice identification.

## 4. Sentencing Claims

Shannon challenges both the trial court's career offender determination and its application of the sentencing enhancement for being a leader or organizer. We address each in turn.

### A. Career Offender Determination

Section 4B1.1(a) of the Guidelines provides that the career offender enhancement applies if: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2015).[1] Effective August 1, 2016, the Guidelines define a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," and that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is murder, voluntary manslaughter, kidnapping, aggravated assault,

---

[1] *See generally United States v. Diaz*, 245 F.3d 294, 300-01 (3d Cir. 2001) ("The general rule is that a defendant should be sentenced under the guideline in effect at the time of sentencing.").

15

a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. App. C, amend. 798 (Supp. Aug. 1, 2016). A "controlled substance offense" is:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. Manual § 4B1.2(b). Determining whether an offense qualifies as a predicate conviction for enhancement requires application of the categorical approach, or a comparison of the elements of the crime of conviction with the elements of the particular career offender provision. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). The prior offense can be classified as a predicate conviction if its elements are "the same as" or "narrower than" the Guidelines offense. *Id.* Where, however, the crime of conviction "sets out one or more elements of the offense in the alternative," the court may apply a modified categorical approach and "consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Id.*

On appeal, Shannon argues for the first time that his aggravated assault conviction is not a crime of violence and two of his drug convictions were not controlled substances offenses, and so the third element of § 4B1.1(a) is not satisfied. We review for plain error. *See United States v. Knight*, 266 F.3d 203, 206 (3d Cir. 2001) ("[W]here a defendant has failed to object to a purported error before the sentencing court, our review on appeal is

16

only to ensure that plain error was not committed."). "Under this standard we must find that (1) an error was committed, (2) the error was plain, *i.e.*, clear or obvious, and (3) the error affected the defendant's substantial rights." *Id.* Even if plain error exists, "our discretionary authority to order correction is to be guided by whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

The Presentence Report ("PSR") states that three of Shannon's prior convictions constitute felony convictions for a controlled substance offense and that one of his prior convictions constitutes a felony conviction for a crime of violence offense pursuant to § 4B1.1(a). Specifically, the PSR refers to the following as controlled substance offenses: (1) a multi-count conviction in 2000 for distribution of a controlled dangerous substance in a school zone, distribution of a controlled dangerous substance, and possession of a controlled dangerous substance with intent to distribute; (2) a multi-count conviction in 1999 for possession of a controlled dangerous substance with intent to distribute (second degree) and possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property; and (3) a multi-count conviction in 2000 for distribution of a controlled dangerous substance within 500 feet of a public housing facility, distribution of a controlled dangerous substance, possession of a controlled dangerous substance with intent to distribute within a school zone, eluding (second degree), and possession of a controlled dangerous substance with intent to distribute. The PSR refers to Shannon's 2000 conviction for aggravated assault and possession of a firearm for an unlawful purpose as a crime of violence offense.

Shannon contests the consideration of two convictions as controlled substance offenses: the 2000 conviction for distribution of a controlled dangerous substance in a school zone and the 2000 conviction for distribution of a controlled dangerous substance within 500 feet of a public housing facility. As to the first, section 2C:35–7(a) of New Jersey's statutory code prohibits:

> distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus.

N.J. Stat. Ann. § 2C:35–7(a) (West 2016). He argues that the crime of conviction is broader than the generic controlled substance offense because distribution of controlled substance is not sufficient for a conviction under the state statute, which requires that it be within a school zone.[2]

Shannon misunderstands the categorical approach. The elements of the state offense are in fact narrower than the elements of the generic offense because the additional element concerning the school zone means that the conduct prohibited by section 2C:35–7(a) is a subset of the conduct covered by the Guidelines provision. *See Descamps*, 133 S. Ct. at 2283 (explaining that a conviction can serve as a predicate offense "if the statute defines the crime more narrowly [than the generic offense], because anyone convicted

---

[2] Shannon additionally relies on this Court's opinion in *Chang-Cruz v. Attorney General United States of America*, 659 F. App'x 114 (3d Cir. 2016), in support of his argument. Not only is *Chang-Cruz*—an immigration decision—inapposite, but it is also not precedential and not binding. *See* I.O.P. 5.7.

under that law is 'necessarily . . . guilty of all the [generic crime's] elements.' (first alteration added) (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)). Consequently, a violation of section 2C:35–7(a) is properly considered a controlled substance offense.

The trial court therefore committed no error in determining that Shannon had at least two predicate offenses for purposes of the career offender enhancement—the 2000 conviction for distribution of a controlled dangerous substance in a school zone and the 1999 conviction for possession of a controlled dangerous substance with intent to distribute, the classification of which Shannon does not dispute. Accordingly, this Court need not reach Shannon's arguments as to the classification of the remaining prior convictions as either a controlled substance offense or crime of violence.

**B. Application of Organizer Enhancement**

Shannon's second argument as to sentencing is that the District Court erred in applying a four-level enhancement for being an organizer or leader. "We review a district court's legal conclusions regarding the Guidelines *de novo*, its application of the Guidelines to the facts for abuse of discretion, and its factual findings for clear error." *U.S. v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009) (citations omitted).

Section 3B1.1(a) of the Guidelines provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels." U.S.S.G. Manual § 3B1.1(a). Application Note 4 adds:

Factors the court should consider include the exercise of decision making

19

authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. Manual § 3B1.1, cmt. n.4. Moreover, this Court has explained that to be an organizer or leader, "the defendant must have exercised some degree of control over others involved in the commission of the offense." *United States v. Helbling*, 209 F.3d 226, 243 (3d Cir. 2000) (quoting *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir. 1992)).

Contrary to Shannon's claim, the District Court here did not clearly err in making specific factual findings that he was an organizer or leader of the drug trafficking conspiracy in New Jersey. The Court found that Shannon "maintained and controlled stash houses where he stored drugs and cash and firearms"; "directed people to send drugs from California to New Jersey"; "participated in some fashion with depositing of cash into various accounts"; and "had numerous cellular telephone communications with co-conspirators over a significant period of time." A 21. The record evidence reflects that Shannon communicated with parties in the New Jersey drug trafficking organization about supplying drugs, directed the shipment of narcotics from California to New Jersey, instructed a co-conspirator on how to package the narcotics for shipment, participated in making cash deposits into bank accounts to pay for the narcotics, and coordinated the delivery of drugs to stash houses that he controlled. We therefore conclude that the District Court's findings were proper; evidence that Shannon recruited others, paid for their

20

participation, or developed the scheme is not necessary—despite Shannon's suggestion to the contrary—in light of a record indicating that he otherwise acted as an organizer.

Shannon next maintains that *Alleyne v. United States*, 133 S. Ct. 2151 (2013), mandates that a jury determine whether he was an organizer or leader beyond a reasonable doubt. Because the finding that Shannon was an organizer is not a fact that "trigger[ed] a statutory mandatory minimum sentence," and the District Court sentenced Shannon to a term of imprisonment and supervised release below the statutory maximum sentence, it did not need to be submitted to a jury. *United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014). The sentence imposed was proper.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.